# EXHIBIT 1
# UNREDACTED PETITION

1   JAMES ROSENFELD (*pro hac vice* application to be submitted)
      jamesrosenfeld@dwt.com
2   DIANA PALACIOS (SBN 290923)
      dianapalacios@dwt.com
3   ADRIAN VALLENS (SBN 332013)
      adrianvallens@dwt.com
4   DAVIS WRIGHT TREMAINE LLP
      865 S. Figueroa Street, 24th Floor
5   Los Angeles, California 90017-2566
      Telephone: (213) 633-6800
6   Fax: (213) 636-6899

7   *Counsel for Petitioner*
      *TWITCH INTERACTIVE, INC.*

8

9                UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11                 SAN JOSE DIVISION

12

| | | |
|---|---|---|
| TWITCH INTERACTIVE, INC., | ) | CASE NO.: |
| | ) | |
| Petitioner, | ) | **NOTICE OF PETITION AND** |
| | ) | **PETITION TO CONFIRM** |
| v. | ) | **ARBITRATION AWARDS AND** |
| | ) | **FOR ENTRY OF JUDGMENT;** |
| FISHWOODCO GMBH DBA LOOTS, | ) | **MEMORANDUM OF POINTS AND** |
| | ) | **AUTHORITIES IN SUPPORT** |
| Respondent. | ) | **THEREOF** |
| | ) | |
| | ) | **[FILED UNDER SEAL]** |
| | ) | |
| | ) | |
| | ) | |

PETITION TO CONFIRM ARBITRATION
AWARDS

**TO RESPONDENT FISHWOODCO GMBH DBA LOOTS, AND ITS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on as soon as this matter may be heard in the United States District Court, Northern District of California – San Jose Division, located at 2112 Robert F. Peckham Federal Building and the United States Courthouse, 280 S. First Street, San Jose, CA 95113-3002, Petitioner Twitch Interactive, Inc. ("Twitch" or "Petitioner"), will and hereby does petition this Court under the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention"), as implemented by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 201 *et seq.*, for an order: (1) confirming in its entirety the Arbitration Awards dated January 4, 2021, May 7, 2021, and February 25, 2022 (the "Final Awards"), issued by the Honorable Elizabeth D. Laporte (ret.) (the "Tribunal"), in the matter of *Twitch Interactive, Inc. v. Fishwoodco GmbH d/b/a Loots* ("Respondent" or "Loots"), JAMS Ref. No. 1110024636; (2) entering final judgment on those Final Awards, consisting of damages, attorneys' fees and costs, and permanent injunctive relief, together with post-Award, pre-judgment interest and post-judgment interest; and (3) granting such other relief as is just and proper.

This Petition is based on this notice of hearing on the Petition, the accompanying Petition and attached memorandum of points and authorities, the attached Declarations of Jordan Gimbel and Diana Palacios in Support of Petitioner's Petition to Confirm Arbitration Award and for Entry of Judgment and the attached exhibits thereto, other pleadings that may be filed in this matter, and any argument or evidence that might be offered at the hearing on this matter.

DATED: June 2, 2022

DAVIS WRIGHT TREMAINE LLP
JAMES ROSENFELD
DIANA PALACIOS
ADRIAN VALLENS

By: _____
Diana Palacios

*Attorneys for Petitioner*
*TWITCH INTERACTIVE, INC.*

1

2

## PETITION TO CONFIRM ARBITRATION AWARD
## AND FOR ENTRY OF JUDGMENT

3

4

5

6

7

8

9

10

Pursuant to the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention"), as implemented by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 201 *et seq.*, Petitioner Twitch, through its attorneys, hereby moves for (a) confirmation of three final awards entered by the Tribunal on January 4, 2021, May 7, 2021, and February 25, 2022 respectively (the "Final Awards"), in the matter of *Twitch Interactive, Inc. v. Fishwoodco GmbH d/b/a Loots*, JAMS Ref. No. 1110024636, and (b) entry of final judgment on those Final Awards.  *See* Declaration of Diana Palacios ("Palacios Decl.") Ex. A (January 4, 2021 Order), Ex. B ( May 7, 2021 Order), Ex. C (Feb. 25, 2022 Order).

11

12

13

14

15

16

17

18

19

On August 20, 2019, Twitch successfully initiated JAMS proceedings against Respondent in Santa Clara County, California, pursuant to JAMS International Rules.  *See* Palacios Decl. ¶¶ 2, 10; Palacios Decl. Ex. C (Feb. 25, 2022 Order) at p. 1.  Respondent initially participated through its representative, but ultimately fell silent, and after a delay of many months due to Respondent's careless behavior and repeated flouting of the Tribunal's rules and orders, the Tribunal granted Petitioner's motion seeking default judgment, finding in favor of Petitioner on all of its claims, awarding Petitioner both damages and injunctive relief, and granting Petitioner its reasonable fees and costs incurred in the arbitration.  *See* Palacios Decl. ¶¶ 5-8; Palacios Decl. Ex. C (Feb. 25, 2022 Order).

20

Accordingly, Petitioner now respectfully petitions this Court for an order:

21

(1)     confirming the Final Awards;

22

23

24

25

26

27

28

(2)     entering judgment in favor of Petitioner and against Respondent in the amount of $1,488,000 in damages, $75,176.19 in attorneys' fees and costs, and for permanent injunctive relief against Respondent and its officers, agents, representatives, employees, and successors and assigns, including but not limited to Loots Media GmbH, Fuehnen Holding GmbH, Marc Fuehnen, and the operators of its websites like loots.com and new.loots.com (or any other name or website incorporating Loots or that is confusingly similar to Loots) (i) from using TWITCH Marks or any

PETITION TO CONFIRM ARBITRATION
AWARDS

- 2 -

1    confusingly similar derivation, (ii) from using or accessing Twitch Services,

2    including through the knowing use of intermediaries, and (iii) from displaying, or

3    causing others to display, advertisements via the Twitch Services in violation of

4    applicable legal terms, plus post-Award, pre-judgment interest and post-judgment

5    interest; and,

6    (3)    any such other relief in favor of Twitch as is just and proper.

### Parties

1.    Petitioner Twitch Interactive, Inc. is a Delaware corporation with its principal place of business in San Francisco, California.

2.    Respondent Fishwoodco Gmbgh, doing business as Loots, is a German-based corporation or other legal entity organized under the laws of Germany, with its principal place of business in Germany.

### Jurisdiction and Venue

3.    Jurisdiction in this Court is proper under 9 U.S.C. § 203, which states that United States district courts shall have original jurisdiction over an action that falls under the New York Convention.  Because this action concerns an "Arbitral award arising out of a legal relationship . . . which is considered as commercial" and is not an "award arising out of such a relationship which is entirely between citizens of the United States," 9 U.S.C. § 202, this action falls under the New York Convention.  Here, the Final Awards were based on Twitch's Terms of Service, Trademark Guidelines, and Developer Services Agreement, which are contracts governing Twitch services, which Respondent, a German corporation, agreed to abide by such that this is not an action entirely between citizens of the United States.  This matter is between a citizen of Delaware and one of Germany, and the amount in controversy exceeds the sum or value of $75,000 pursuant to 28 U.S.C. § 1332, and involves violations of, *inter alia*, the federal Lanham Act pursuant to 28 U.S.C. § 1331.  Finally, because of the international nature of this arbitration, at Respondent's request, JAMS conducted all arbitration proceedings under JAMS International Rules.  *See* Palacios Decl. Ex. C (Feb. 25, 2022 Award) at pp. 1-2.

4.    This Court also has personal jurisdiction over Petitioner and Respondent.  Both

1   parties purposefully availed themselves of the benefits and protections of federal law via use of

2   Twitch's services, and through their agreement to voluntarily arbitrate claims arising out of their

3   contacts in California state or federal courts, which they so did in the aforementioned proceedings.

4          5.      Venue in this Court is proper pursuant to 9 U.S.C. § 204 because this is the Court

5   for the "district and division which embraces the place designated in the agreement as the place of

6   arbitration."  Twitch's Terms of Service govern access to and use of the Twitch services such as

7   those described below, and Respondent agreed to abide by the Terms of Service by registering an

8   account with Twitch, using Twitch's services, and/or by accessing Twitch's API to, among other

9   things, develop, test, or use their advertising application Loots.  *See* Palacios Decl. ¶ 3.  Twitch's

10  Terms of Service state that "the state or federal courts in Santa Clara County, California have

11  exclusive jurisdiction over any appeals of an arbitration award," and three such awards were so

12  made.  *Id.* ¶¶ 4-8; *see also* Gimbel Decl. Ex. A ¶ 8 (Terms of Service from February 18, 2017);

13  Gimbel Decl. Ex. B ¶ 15(d)(i) (Terms of Service in effect on September 16, 2020).

**Intradistrict Assignment**

15         6.      Assignment to the San Jose Division is proper under Local Civil Rule 3-2(e)

16  because the parties' agreed that "the state or federal courts in Santa Clara County, California have

17  exclusive jurisdiction over any appeals of an arbitration award and over any suit between the

18  parties not subject to arbitration."  *See id.*

**Relevant Facts[1]**

20         7.      Petitioner is one of the world's leading services for content creators to stream

21  content as part of a social, interactive community.  *See* Gimbel Decl. ¶ 2.  Each month, millions of

22  people come together to create their own entertainment: live, never-to-be repeated experiences

23  created by the magical interactions of the many.  *See id.*  In 2020, users watched over 1 trillion

24  minutes of content, and Twitch.tv had 30 million average daily visitors.  *See id.*  Twitch's success

25  is due in part to the measures it has taken to create a safe and accessible community for its

---

27       [1] The facts listed herein are taken from the Tribunal's Final Awards and/or the Gimbel and Palacios Declarations attached to this Petition.  A fuller rendition of the facts relating to this
28   Petition can be found in the Final Awards.

PETITION TO CONFIRM ARBITRATION
AWARDS

- 4 -

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800

1   millions of users.  *See id.*

2           8.      On Twitch, streamers (those Twitch users who share live content on the service)

3   engage and entertain their viewers.  *See* Gimbel Decl. ¶ 3. Twitch enables streamers to earn a

4   livelihood by offering them ways to monetize their streaming.  *See id.*  Two specific ways that

5   streamers can earn a livelihood are by participating in the Twitch Affiliate and Twitch Partnership

6   programs.  *See id.*  Among other ways that Twitch allows Affiliates and Partners to monetize their

7   streaming, it pays them a share of the revenue generated via advertising on their respective Twitch

8   channels.  *See id.*

9           9.      Twitch also requires its users to accept and meet its terms and guidelines.  Palacios

10  Decl. Ex. C (Feb. 25, 2022 Order) at p. 4.

11          10.     Twitch owns rights in the TWITCH trademark and the "Glitch Logo." It also owns

12  common law rights and international applications or registrations, which it has used in commerce

13  since at least June 2012.  *See id.* at pp. 3-4.

14          11.     Respondent operates an ad serving platform formerly known as Loots, which has

15  done and does business under similar monikers like New.Loots, that Twitch streamers use to make

16  ads appear during their broadcast.  *See id.* at p. 4  Respondent claims to share revenues with each

17  streamer for each ad.  *See id.*

18          12.     Specifically, Respondent through its platform enables streamers to share

19  advertisements that pop up in the streamer's live broadcast, and are visible to all other Twitch

20  users who are viewing that stream.  *See id.*  Respondent calculates its streamers' earnings based on

21  factors such as the number of people who view the ads, using information harvested from Twitch

22  by unauthorized methods, and then provides the improperly harvested data to advertisers.  *See id.*

23  Respondents also use the Twitch marks in commerce, including in pitch deck materials that

24  suggest that the platform supports Twitch.  *See id.* at pp. 4-5.

25          13.     Respondent signed up for a Twitch user account on or about May 19, 2016.  *See id.*

26  at p. 4.  By doing so, Respondent agreed to Twitch's Terms of Service, Trademark Guidelines, and

27  other policies incorporated into the Terms of Service.  *See id.*  Respondent also signed up for a

28  developer account to access Twitch services on or about September 13, 2018, thereby agreeing to

1    the Developer Services Agreement. *See id.*  Collectively, these documents are known as the

2    "Agreements."[2]

3        14.     The Terms of Service and Developer Services Agreements contain numerous

4    prohibitions and restrictions including against collection of personal information about users with

5    consent, accessing computer resources of Twitch via automated means, using its services in

6    violation of intellectual property law, prohibiting use of its marks without written permission or in

7    a way that suggests an affiliation with Twitch, and regulating the use of data collecting through

8    using Twitch's services. *See id.* at p. 4.

9        15.     Twitch's Terms of Service also contain the following arbitration provision:

> You and Twitch agree to arbitrate any dispute arising from these Terms of Service or your use of the Twitch Services, except that you and Twitch are not required to arbitrate any dispute in which either party seeks equitable and other relief for the alleged unlawful use of copyrights, trademarks, trade names, logos, trade secrets, or patents.  ARBITRATION PREVENTS YOU FROM SUING IN COURT AND FROM HAVING A JURY TRIAL.  You and Twitch agree that you will notify each other in writing of any dispute within thirty (30) days of when it arises.  Notice to Twitch shall be sent to: Twitch Interactive, Inc., Attn: Legal, 350 Bush Street, 2nd Floor, San Francisco, CA 94104. You and Twitch further agree: to attempt informal resolution prior to any demand for arbitration; that any arbitration will occur in Santa Clara County, California; that arbitration will be conducted confidentially by a single arbitrator in accordance with the rules of JAMS; and that the state or federal courts in Santa Clara County, California have exclusive jurisdiction over any appeals of an arbitration award and over any suit between the parties not subject to arbitration.  Other than class procedures and remedies discussed below, the arbitrator has the authority to grant any remedy that would otherwise be available in court.  Any dispute between the parties will be governed by this Agreement and the laws of the State of California and applicable United States law, without giving effect to any conflict of laws principles that may provide for the application of the law of another jurisdiction.  Whether the dispute is heard in arbitration or in court, you and Twitch will not commence against the other a class action, class arbitration, or other representative action or proceeding.

---

[2] During the Arbitration, there were two Terms of Service (and, incorporated within, Trademark Guideline) agreements: one from February 18, 2017, and the other in effect on September 16, 2020, the approximate date of Twitch's motion for default judgment to the Tribunal.  *See* Gimbel Decl. Exs. 1 & 2 (Terms of Service) and Gimbel Decl. Exs. 3 & 4 (Trademark Guidelines).  There were also two operative Developer Service Agreements: one dated July 19, 2018 before Respondent signed up for a Developer account, and the other in effect on September 16, 2020, the approximate date of Twitch's motion for default judgment to the Tribunal.  *See* Gimbel Decl. Exs. 5 & 6.  While the Arbitration was commenced in August 2019, due to the ongoing nature of Petitioner's injury and Respondent's violative conduct throughout the Arbitration, both sets of documents are attached.

1   *See* Gimbel Decl. Ex. B ¶ 15.d.(i) (Terms of Service in effect on September 16, 2020); *see also*

2   Gimbel Decl. Ex. A ¶ 8 (Terms of Service from February 18, 2017).

3        16.    Beginning in March 2017, Twitch sent communications to Respondent requesting

4   that it cease and desist violations of its terms of service and infringement of its intellectual

5   property.  *See* Palacios Decl. Ex. C (Feb. 25, 2022 Order) at p. 5.  Respondent did not do so.  *See*

6   *id.*

7        17.    Pursuant to Twitch's Terms of Service, on August 20, 2019, Petitioner initiated

8   JAMS proceedings against Respondent in Santa Clara County, California.  *See, id.* at p. 1.

9        18.    Respondent subsequently appeared through counsel, and sought to apply JAMS

10   International Rules to the proceeding.  Respondent's request was ultimately granted.  *See id.* at

11   pp. 1-2.  The matter was titled *Twitch Interactive, Inc. v. Fishwoodco Gmbh d/b/a Loots*, and was

12   given JAMS Ref. No. 1110024636.  *See id.*

13        19.    Respondent's Statement of Defense was due May 9, 2020.  *See id.* at p. 1.

14   Respondent missed the deadline for filings its Statement of Defense.  *See id.* Respondent also

15   failed to inform the Tribunal of any change in representation or address.  *See id.*

16        20.    Article 28 of the JAMS International Rules provides that after the Respondent fails

17   to submit a Statement of Defense, the Tribunal may proceed to make an award with a

18   determination based on the submission of proof of the validity and amount of the claim.[3]

19        21.    In accordance with JAMS International Rules, Petitioner moved for Default

20   Judgment on September 24, 2020.  *See id.* at p. 2.  After Petitioner briefed its motion, a new

21   purported representative for Respondent contacted JAMS via email, claiming to have received the

22   motion by accident, having seen emails between "former employees" and JAMS, and claiming it

23   looked like a scam.  *See id.*  Respondent did not challenge service, substitute in current employees,

24   or update its address.  *See id.*

25        22.    In light of Respondent's response, the Tribunal subsequently ordered Respondent

26

27       [3] JAMS modified its International Arbitration Rules on June 2, 2021.  The Rule on Default

28   now appears as Article 27.  For the purposes of this Petition, Petitioner refers to Article 28, which was the applicable provision at the time Petitioner moved for default judgment.

to file a brief "establishing good cause" for its delay, and "demonstrating the availability of meritorious defense(s)."  *See id.* at p. 2.  On December 4, 2020, the deadline by which a response was due, Respondent stated that "given limited resources and the holiday season, Respondent could provide proper documentation by February 28, 2021[.]"  *See id.*

23.     In response, the Tribunal found that Respondent's "response utterly failed to establish good cause for Respondent's failure to comply with more than one order of the Tribunal, including the one addressed to him giving a last chance to delay entry of default judgment."  *See id.* at p. 3.  Accordingly, the Tribunal proceeded to address the merits of Petitioner's long pending motion for default judgment, drawing adverse inferences against Respondent due to its "failures to comply with its directions without good cause and pattern of obfuscation and delay."  *See id.*

24.     The Tribunal found that Petitioner made the requisite showing for authorized relief, supported by competent evidence.  *See id.* at p. 3.  Notably, the Tribunal found:

> Respondent made unauthorized use of Twitch's services by offering an application which permits Twitch streamers and their viewers to run advertisements on Twitch's services, thereby misappropriating Twitch's services for its own commercial purpose and misleadingly suggesting an affiliation with or endorsement by Twitch.  Doing so violated the user agreements Respondent entered into with Twitch and federal law.  Further, it continued to do so after multiple demands by Twitch to cease and promises to do so.

*See id.*

25.     Turning first to the specifics of Petitioner's breach of contract claim, the Tribunal found this cause of action was satisfied through Petitioner's evidentiary showing that it had valid contracts with Respondent, its own performance thereof, and Respondent's breach and resulting damages.  *See id.* at p. 5.  The Tribunal noted that Respondent entered into contracts by accepting the terms of use by registering an account on Twitch and using its service to use their advertising application Loots and send ads to Twitch users.  *See id.*  The terms of use also incorporate the Trademark Guidelines.  *See id.*  Respondents committed numerous breaches including, *inter alia*, using Twitch services for its own commercial purposes without permission and using Twitch trademarks without written permission, which harmed Twitch.  *See id.*  Respondent also committed numerous breaches of the Developer Services Agreement, including, *inter alia*, using

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800

1 and storing personal information about Twitch users without authorization, including using it for

2 marketing, harming Twitch's ability to regulate the data provided to advertisers and eroding its

3 goodwill. *See id.* at pp. 5-6.

4       26.    Next, the Tribunal found Respondent violated the Lanham Act by infringing

5 Twitch's trademarks and engaging in unfair competition. *See id.* at p. 6. It determined Twitch

6 owned the marks, and Respondent's use was likely to cause confusion or deception. *See id.* It

7 found this infringement was willful, and noted that Respondent continued to infringe even after

8 the Arbitration proceedings were initiated. *See id.*

9       27.    Finally, the Tribunal determined that Respondent tortiously interfered with

10 Twitch's contractual relationships. *See id.* at pp. 6-7. Specifically, the Tribunal held that Twitch

11 demonstrated that Respondent knew of Twitch's valid contacts with third parties under the Twitch

12 Partnership and Affiliate programs, which gave exclusive rights to the initial broadcast of its

13 users' content including the exclusive right to serve ads for a specific period, and engaged in

14 intentional acts designed to disrupt and which did disrupt such relationships, resulting in damage,

15 and harmed user experience and eroded Twitch's good will. *See id.*

16       28.    Ultimately, the Tribunal issued a January 4, 2021 Order Granting Default Judgment

17 Against Respondent, as follows:

18          a.    awarded damages in the sum of $1,488,000;

19          b.    awarded reasonable attorneys' fees and costs, to be determined according to

20 proof; and

21          c.    issued a permanent injunction against: "Respondent and its officers, agents,

22 representatives, employees, and successors and assigns, prohibiting them from: (a) Using

23 the TWITCH Marks or an confusingly similar derivation thereof; (b) Using or accessing

24 Twitch Services, including through the knowing use of intermediaries; and (c) Displaying,

25 or causing others to display advertisements via the Twitch Services in violation of

26 applicable legal terms."

27 *See* Palacios Decl. Ex. A (January 4, 2021 Order) at pp. 9-10.

28       29.    On May 7, 2021, upon Petitioner's further application for costs and fees, and

having shown sufficient evidentiary support, the Tribunal awarded Petitioner attorney's fees totaling $59,165.36, and costs of $16,010.83, for a total fee and cost award of $75,176.19.  *See* Palacios Decl. Ex. B (May 7, 2021 Order) at p. 3.

30.     On October 20, 2021, Petitioner sought an amended Order to further enjoin Respondent's unlawful behavior based upon Respondent's continued operation of the same exact scheme but under a slightly altered name (New.Loots).  *See* Palacios Decl. ¶ 7; *see also* Palacios Decl. Ex. C (Feb. 25, 2022 Order) at p. 4 ("Respondent operates an ad platform known as Loots," which does "business under similar monikers like New.Loots[.]").

31.     On February 25, 2022, the Tribunal issued an Amended Order Granting Default Judgment Against Respondent, awarding relief, including identical injunctive relief, but now enjoining Respondent, its officers, agents, representatives, employees, and successors and assigns as well as "the operators of its websites like loots.com and new.loots.com (or any other name or website incorporating Loots or that is confusingly similar to Loots)" from (a) Using the TWITCH Marks or an confusingly similar derivation thereof; (b) Using or accessing Twitch Services, including through the knowing use of intermediaries; and (c) Displaying, or causing others to display advertisements via the Twitch Services in violation of applicable legal terms.  *See* Palacios Dec. Ex. C (Feb. 25, 2022 Order) at pp. 8-9.

**Request for Confirmation of the Award**

32.     Petitioner incorporates the preceding paragraphs as if fully set forth herein.

33.     Pursuant to the Final Awards, the Tribunal has awarded in favor of Petitioner and against Respondent.

34.     The Tribunal's Final Awards were made in accordance with the terms and provisions of the parties' written agreement, and applicable law, and is in all respects proper.

35.     Neither Respondent nor any representative acting on its behalf has made an application for correction or modification of the Award, nor has Respondent filed a motion to vacate, modify, or challenge with a court of competent jurisdiction.

36.     Petitioner brings this petition within three years after the delivery of the Award.

37.     Post-award, pre-judgment interest should be entered from the date of the Award to

1    the date this Court enters judgment confirming the Award, pursuant to federal law.

2          38.      Post-judgment interest should be entered from the date of entry of judgment

3    confirming the Award at the federal statutory rate pursuant to 28 U.S.C. § 1961(a).

4          39.      WHEREFORE, Petitioner respectfully requests that the Court:  (i) confirm the

5    Tribunal's Final Awards; (ii) direct the entry of judgment in favor of Petitioner and against

6    Respondent in the amount of $1,488,000 in damages, plus attorneys' fees and costs totaling

7    $75,176.19, as well as with injunctive relief as set forth in the Tribunal's Final Awards, together

8    with post-Award, pre-judgment interest from the date of the most recent Final Award, February

9    25, 2022, and post-judgment interest at the statutory rate pursuant to 28 U.S.C. § 1961(a) from the

10   date of entry of judgment confirming the award; and (iii) grant such other relief in favor of

11   Petitioner as is just and proper.

12

13   DATED: June 2, 2022                    DAVIS  WRIGHT  TREMAINE  LLP

14                                          JAMES ROSENFELD
                                            DIANA PALACIOS
15                                          ADRIAN VALLENS

16                                          By:_____
                                               Diana Palacios
17
                                            *Attorney for Petitioner*
18                                          *TWITCH INTERACTIVE, INC.*

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS & AUTHORITIES

### I.   INTRODUCTION

This is a Petition to confirm three Arbitration Awards recently issued by a JAMS Tribunal pursuant to JAMS International Arbitration Rules, and which awarded Petitioner Twitch both damages and permanent injunctive relief against Respondent Loots.

This underlying dispute arises from Respondent's Loots' improper use of Twitch's intellectual property and interference with Twitch's services and third-party agreements.  By providing Twitch streamers and their viewers access to a service which runs advertisements on Twitch's service, altering the experience Twitch intends for its users, improperly collecting, storing, and selling Twitch user information, and falsely suggesting an affiliation with or endorsement by Twitch in a manner confusing to Twitch's users, Respondent repeatedly violated applicable user agreements and federal trademark laws.

For the reasons set forth below, Petitioner seeks an order both confirming the Final Awards, and enforcing judgment as to the same.

### II.   FACTUAL BACKGROUND

Petitioner is one of the world's leading services for content creators to stream content, where millions of people come together to create their own entertainment.  *See* Petition ¶ 7.  For example, in 2020, users watched over 1 trillion minutes of content, and Twitch.tv had 30 million average daily visitors.  *See id.*

Among other ways, Twitch allows streamers (those Twitch users who share live content on the service) to monetize their streaming by paying them a share of the revenue generated via advertising on their respective Twitch channels.  *See id.* ¶ 8.  Respondent operates an ad serving platform formerly known as Loots, which has done and does business under similar monikers like New.Loots, that streamers used to make ads appear during their broadcast.  *See id.* ¶ 11.  Respondent signed up for a Twitch user account on or about May 19, 2016, and by doing so, Respondent agreed to Twitch's Terms of Service, Trademark Guidelines, and other policies incorporated into the Terms of Service.  *See id.* ¶ 13.  On or about September 13, 2018, Respondent signed up for a developer account to access Twitch Services.  *See id.*  By doing so,

Respondent agreed to the operative Developer Services Agreement. *See id.* These terms that Respondent agreed to contain numerous prohibitions and restrictions, including, *inter alia*, against collection of personal information about users without consent, accessing computer resources of Twitch via automated means, using its services in violation of intellectual property law, prohibiting use of its marks without written permission or in a way that suggests an affiliation with Twitch, and regulating the use of data collecting through using Twitch's services. *See id.* ¶ 14.

Despite agreeing to the Terms of Service, Trademark Guidelines, and Developer Service Agreement, Respondent's ad serving platform permitted (and continues to permit) streamers to make ads appear during their broadcast, and the platform shares revenues with streamers for each ad. *See id.* ¶¶ 11-14. Specifically, Respondent enables streamers to advertisements that pop up in the streamer's live broadcast and are visible to all other Twitch users who are viewing that stream. *See id.*

On August, 20, 2019, Petitioner initiated arbitration proceedings with JAMS, asserting, *inter alia*, claims for Lanham Act violations, contractual breach of Twitch's Terms of Service and Developer Services Agreement, and tortious interference with contractual relationship, and sought attorneys' fees and costs. *See id.* ¶¶ 25-27; Palacios Decl. Ex. C (Feb. 25, 2022 Order). On February 27, 2020, Petitioner amended its Statement of Claims, and while the Tribunal informed the parties that Respondent's Statement of Defense was due on May 9, 2020, Respondent failed to submit a Statement of Defense, and ultimately refused to further participate in the proceedings. *See id.* ¶¶ 3, 19, 22- 23; Palacios Decl. Ex. C (Feb. 25, 2022 Order) at pp. 1-3.

On January 4, 2021, in response to Petitioner's motion for default judgment, and pursuant to then operative JAMS International Arbitration Rules and Procedures Article 28, which stated that "[i]f the Respondent fails to submit a Statement of Defense" then "the Tribunal may nevertheless proceed with the arbitration and make an award," the Tribunal granted the relief sought and issued an Order Granting Default Judgment Against Respondent. *See* Pet. ¶¶ 20, 28; Palacios Decl. Ex. A (Jan. 4, 2021 Order). On May 7, 2021, upon further application of fees and costs (and supported by evidence thereof), Tribunal awarded fees totaling $59,165.36 and costs

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800

totaling $16,010.83, for a total of $75,176.19.  *See* Pet. ¶ 29; Palacios Decl. Ex. B (May 7, 2021 Order).

On October 20, 2021, Petitioner sought an amended Order to further enjoin Respondent's unlawful behavior based upon Respondent's continued operation of the same exact scheme but under a slightly altered name (New.Loots).  *See* Pet. ¶ 30.  On February 25, 2022, the Tribunal issued an Amended Order Granting Default Judgment Against Respondent, awarding the same injunctive relief, but now adding clarifying language that it was enjoining Respondent, its officers, agents, representatives, employees, and successors and assigns as well as "the operators of its websites like loots.com and new.loots.com (or any other name or website incorporating Loots or that is confusingly similar to Loots)" from the unlawful behavior listed in the Award.  *See* Pet. ¶ 31; Palacios Decl. Ex. C (Feb. 25, 2022 Order).

## III.   ARGUMENT

### A.   Petitioner is Entitled to Judgment on the Award

Confirmation of an arbitration award is a summary proceeding, which converts a final arbitration award into a judgment of the court.  *See Braunhagey & Borden LLP v. GMP Haw., Inc.*, No. 13-cv-05253-TEH, 2014 WL 662496, at *3 (N.D. Cal. Feb. 20, 2014) (citing *Ministry of Def. and Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Def. Sys., Inc.*, 665 F.3d 1091, 1094 n.1 (9th Cir. 2011)).  "Once an award is confirmed, it has the same force and effect as a judgment in a civil action, and may be enforced by any means available to enforce civil judgments . . . . The Court's task is to determine whether the parties agreed to arbitrate their dispute and whether they agreed to permit confirmation of the award."  *Id.*  Moreover, federal law governing the confirmation of arbitral awards offers a strong congressional policy favoring arbitration.  This policy applies "with special force in the field of international commerce."  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985).

### 1.   The Court has Jurisdiction to Confirm the Award

This Court has original jurisdiction to confirm the Award under 9 U.S.C. § 203.  This is not an action entirely between citizens of the United States as Petitioner is a Delaware corporation with its principal place of business in California, while Respondent is a German corporation or

other legal entity organized under the laws of Germany with its principal place of business in Germany, and this matter in controversy exceeds the sum or value of $75,000.  *See* Pet. ¶¶ 1-3. Moreover, this dispute involves commercial contracts governing Twitch streaming services and advertising, including by Respondent, implicating issues of federal law, including through Respondent's violations of the Lanham Act.  *See id.* ¶¶ 3, 26.  Because of the international nature of this arbitration, and upon Respondent's request, JAMS conducted all arbitration proceedings under JAMS International Rules.  *See id.* ¶¶ 3, 18, 20, 21.  The Court also has personal jurisdiction over Petitioner and Respondent: both parties purposefully availed themselves of the benefits and protections of federal law and California law via use of Twitch's services, and the parties agreed to and did arbitrate their claims arising out of their contracts in California.  *See, e.g.*, *Fireman's Fund Ins. Co. v. National Bank of Cooperatives,* 103 F.3d 888, 894-95 (9th Cir. 1996) (holding that agreeing to arbitrate and participating in arbitration in San Francisco supported personal jurisdiction over a non-resident defendant); Pet. ¶ 4.

Furthermore, venue is proper in this judicial district under 9 U.S.C. § 204, as this is the Court for the district and division which embraces the place designated in the agreement as the place of arbitration.  The Terms of Service state that "the state or federal courts in Santa Clara County, California have exclusive jurisdiction over any appeals of an arbitration award," and three such awards were so made.  *See* Petition ¶¶ 5, 6, 15; *see also* Gimbel Decl. Exs. A ¶ 8 & B ¶ 15(d)(i) (Terms of Service).

### 2.   Petitioner is Entitled to an Order Confirming the Award

Pursuant to the New York Convention, "within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration."  9 U.S.C. § 207.  Under Article IV of the New York Convention, which is incorporated into Chapter 2 of the FAA, the party petitioning the court for confirmation is required to provide "[t]he duly authenticated original award or a duly certified copy thereof," and "[t]he original agreement" or "a duly certified copy thereof," art. IV § 1, and upon receipt, the court "shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or

1   enforcement of the award specified in the said Convention."  9 U.S.C. § 207; *see Ministry of Def.*

2   *of the Islamic Republic of Iran v. Gould, Inc.*, 969 F.2d 764, 770 (9th Cir. 1992) (mandatory

3   language of the FAA offers court "little discretion").

4          The New York Convention sets forth limited grounds for refusing confirmation: (1) lack of

5   capacity of a party or invalidity of the arbitration agreement; (2) lack of proper notice or inability

6   to present a case; (3) the award goes beyond the scope of the submission to arbitration; (4) the

7   composition of the arbitration tribunal or the arbitration procedures were not in accordance with

8   the parties' agreement or the applicable law; (5) the award has not yet become binding or has been

9   set aside by a competent authority; (6) the subject matter of the dispute is not capable of being

10   arbitrated; and (7) recognition of the award would be contrary to public policy of that country.

11   New York Convention, Article V § 1; *see Tianjin Port Free Trade Zone Int'l Trade Serv. Co. v.*

12   *Tiancheng Int'l, Inc.*, No. ED CV 17-2127 PA (SHKx), 2018 WL 4502497, at *3 (C.D. Cal. Sept.

13   18, 2018).  These defenses were incorporated under the FAA pursuant to 9 U.S.C. § 207 ("The

14   court shall confirm the award unless it finds one of the grounds for refusal or deferral of

15   recognition or enforcement of the award specified in the said Convention.").  Notably, it is the

16   party opposing confirmation that bears the burden of proving that one of these narrow grounds

17   applies.  *See Gould*, 969 F.2d at 770.  These grounds are to be "construed narrowly" in conformity

18   with the Convention's "general pro-enforcement bias."  *Id.* (citation and internal quotation marks

19   omitted).  Or, to put it differently, a court *must* confirm a foreign arbitral award unless the party

20   resisting enforcement meets its "substantial" burden of proving one of the narrowly interpreted

21   defenses.  *See Polimaster Ltd. v. RAE Sys., Inc.*, 623 F.3d 832, 836 (9th Cir. 2010).

22          Here, Petitioner meets all requirements necessary for confirmation.  As an initial matter,

23   Petitioner has provided Exhibits A, B, C, and D to the Palacios Declaration, which are duly

24   certified copies of the Final Arbitration Awards.  *See* Palacios Decl. Exs. A (January 4, 2021

25   Order), B (May 7, 2021 Order), C (Feb. 25, 2022 Order); *see also* D (JAMS Certification of Final

26   Awards).  Petitioner has also provided duly certified copies of the Terms of Service containing the

27   arbitration provision, as well as the Trademark Guidelines and Developer Services Agreement.

28   *See* Gimbel Decl. Exs. A & B (Terms of Service), 3 & 4 (Trademark Guidelines), and 5 & 6

PETITION TO CONFIRM ARBITRATION
AWARDS                                    - 16 -                    **DAVIS WRIGHT TREMAINE** LLP
                                                                   865 S. FIGUEROA ST, SUITE 2400
                                                                   LOS ANGELES, CALIFORNIA 90017-
                                                                   2566
                                                                   (213) 633-6800

1  (Developer Service Agreements).  This satisfies the certified copy requirements of the New York

2  Convention's Article IV.  *See, e.g.*, *Wong To Yick Wood Lock Ointment Ltd. V. Madison One*

3  *Acme Inc.*, 2015 WL 13919442, at *5 (C.D. Cal. Apr. 2015) (certification by petitioner's counsel

4  or arbitration entity of arbitration documents required under the New York Convention is

5  permissible) (citing cases).[4]  Finally, Petitioner also attaches to the Petition a declaration certifying

6  that the Terms of Service, Trademark Guidelines, and Developer Service Agreement are true and

7  accurate copies.  *See* Gimbel Decl. ¶ 4.

8         Furthermore, none of the statutory bases for refusing to confirm an arbitration award

9  pursuant to the New York Convention apply in the instant matter.  The Final Awards were made

10  pursuant to valid arbitration agreements.  Each party was provided the opportunity to present their

11  case; after appearing and reappearing multiple times, and after being given numerous

12  accommodations, Respondent ultimately refused to timely participate in the Arbitration

13  proceedings, and a default order was entered.  The Final Awards were made in accordance with

14  the terms and provisions of the Agreement.  The Final Award is final and enforceable, and the

15  arbitration process and arbitrator were in accordance with the Agreement.  As such, this Court

16  should confirm Petitioner's Final Awards, and enter judgment accordingly.

17         The Tribunal also properly awarded Petitioner attorneys' fees and costs, as Petition was the

18  prevailing party to the arbitration.  As discussed above, this was an international arbitration

19  pursuant to JAMS International Rules.  *See* Pet. ¶¶ 3, 21; Palacios Decl. ¶ 10.  Under JAMS

20  International Rules 36.4 (instructing the Tribunal to fix the arbitration costs in its award) and 36.1

21  (holding that the arbitration costs consist of the "reasonable costs for legal representation of a

22  successful party"), Petitioners were entitled to reasonable attorneys' fees and costs.  *See* Palacios

23  Decl. ¶ 10.  Upon review of Twitch's application for fees and costs, which was reasonable and

24  supported by evidence, the Tribunal granted Twitch's motion on May 7, 2021, and awarded

25

26         [4] Unlike for domestic awards under the FAA, confirmation of awards pursuant to the New
   York Convention do not require confirmation on the express or implicit consent of the parties.
27  *See, e.g.*, *Phoenix Aktiengesellschaft v. Ecoplas, Inc.,* 391 F.3d 433, 436 (2d Cir. 2004);
   *Polimaster Ltd. v. RAE Sys., Inc.,* No. C 05-1887, 2009 WL 196169, at *5-6 (N.D. Cal. Jan. 13,
28  2009), *rev'd on other grounds*, 623 F.3d 832 (9th Cir. 2010).

PETITION TO CONFIRM ARBITRATION
AWARDS                                         - 17 -                  **DAVIS WRIGHT TREMAINE** LLP
                                                                      865 S. FIGUEROA ST, SUITE 2400
                                                                      LOS ANGELES, CALIFORNIA 90017-
                                                                      2566
                                                                      (213) 633-6800

1  reasonable attorneys' fees totaling $59,165.36 and costs of $16,010.83, totaling $75,176.19.  *See*

2  Pet. ¶ 29.

3          Respondent has not sought to vacate, modify, or challenge the Final Awards, such that the

4  limited statutory grounds under sections 10 and 11 of the FAA are not present.  *See id.* ¶ 35;

5  Palacios Decl. ¶ 11.

6          Accordingly, the Court should confirm Petitioners' Final Awards pursuant to 9 U.S.C.

7  § 207, and enter judgment thereon pursuant to 9 U.S.C. § 13.

8          **B.      Petitioner is Entitled to Post-Award and Post-Judgment Interest**

9          This Court also has discretion to award Petitioners post-award, pre-judgment interest.  *See*

10 *Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Def.*

11 *Sys., Inc.*, 665 F.3d 1091, 1103 (9th Cir. 2011) ("federal law allows a district court to award post-

12 award, prejudgment interest in actions under the New York Convention").  Without an award of

13 post-award, pre-judgment interest, Loots, as "the losing party in the arbitration has 'an incentive . .

14 . to withhold payment'—a result contrary to the purposes of the Convention."  *Id.* "Where an

15 award is silent on whether a party may recover post-award interest, prejudgment interest is

16 consistent with the award."  *See, e.g.*, *Purus Plastics GmbH v. Eco-Terr Distrib., Inc.*, No. C18-

17 0277JLR, 2018 WL 3064817, at *10 (W.D. Wash. June 21, 2018) (citation omitted, and noting

18 that courts presume post-award prejudgment interest absent a persuasive showing to the contrary).

19 To calculate post-award, pre-judgment interest, the Ninth Circuit generally uses the "interest rate

20 prescribed for post-judgment interest under 28 U.S.C. § 1961."  *See id.* (citing cases).  As such,

21 the Court should award post-award prejudgment interest from the date of the most recent Final

22 Award (February 25, 2022), at the appropriate rate set forth according to 28 U.S.C. § 1961.

23         The Court should also award post-judgment interest under federal law.  "Post-judgment

24 interest on a district court judgment is mandatory per 28 U.S.C. § 1961 . . . . Post-judgment

25 interest should be awarded on the entire amount of the judgment, including any pre-judgment

26 interest . . . Typically, post-judgment interest is awarded from the date of judgment until the

27 judgment is satisfied."  *Lagstein v. Certain Underwriters at Lloyd's of London*, 725 F.3d 1050,

28 1056 (9th Cir. 2013) (granting post-judgment interest on an arbitration award), *see also Fid. Fed.*

PETITION TO CONFIRM ARBITRATION
AWARDS                                                          - 18 -                    **DAVIS WRIGHT TREMAINE** LLP
                                                                                          865 S. FIGUEROA ST, SUITE 2400
                                                                                          LOS ANGELES, CALIFORNIA 90017-
                                                                                          2566
                                                                                          (213) 633-6800

*Bank, FSB v. Durga Ma Corp.*, 387 F.3d 1021 (9th Cir. 2004) ("However, once an arbitration award is confirmed in federal court, the rate specified in § 1961 applies. This is the case even if the arbitration award purported to grant post-judgment interest." (internal citations omitted)). Therefore, post-judgment interest should also be awarded from the date of the judgment on this petition, at the appropriate rate pursuant to 28 U.S.C. § 1961.

## IV.   **CONCLUSION**

For the foregoing reasons, Petitioner Twitch respectfully asks this Court to (1) confirm in its entirety the Final Awards; (2) enter final judgment on the Final Awards, consisting of damages, attorneys' fees and costs, and permanent injunctive relief set forth therein, together with post-Award, pre-judgment interest and post-judgment interest; and (3) grant such other relief in favor of Twitch, Interactive Inc. as is just and proper.

DATED: June 2, 2022

DAVIS WRIGHT TREMAINE LLP
JAMES ROSENFELD
DIANA PALACIOS
ADRIAN VALLENS

By:_____
Diana Palacios

*Attorneys for Petitioner*
*TWITCH INTERACTIVE, INC.*

PETITION TO CONFIRM ARBITRATION
AWARDS                                    - 19 -

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-
2566
(213) 633-6800