# EXHIBIT 5
# UNREDACTED PALACIOS DECLARATION EX. C

Hon. Elizabeth D. Laporte (Ret.)
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111
Tel: 415- 982-5267
Fax: 415-982-5287

ARBITRATOR

JAMS ARBITRATION

| | |
|---|---|
| TWITCH INTERACTIVE, INC., <br><br> Claimant, <br><br> v. <br><br> FISHWOODCO GMBH DBA LOOTS, <br><br> Respondent. | JAMS Ref No. 1110024636 <br><br> **[PROPOSED] AMENDED ORDER GRANTING DEFAULT JUDGMENT AGAINST RESPONDENT** |

  The history of this arbitration, initiated more than a year ago in August 2019, is set forth in the previous Order Requiring Respondent to Promptly Justify Delaying Entry of Default Judgment. In short, Respondent initially participated including through its representative Marc Fuehnen but then fell silent, never informing the Tribunal of any change in representation or address and missing the deadline for its Statement of Defense months ago on May 9, 2020.

  Article 28 of the JAMS International Rules – which Respondent successfully argued apply to this arbitration when it was still participating – provides that after the Respondent fails

1

to submit a Statement of Defense, the Tribunal may proceed to make an award with a determination based on the submission of proof of the validity and amount of the claim. Accordingly, Twitch moved for Default Judgment on September 24, 2020. Only after Claimant fully briefed its motion for default judgment and right before oral argument did a new purported representative of Respondent, Matthias Zumwinkle, email JAMS with a vague claim of receiving the motion by accident, seeing emails between "former employees" and JAMS, and claiming it looked like a scam. Claimant pointed out that he did not dispute that those employees were properly served on behalf of Respondent, which failed to substitute in current employees or update its address.

Article 14.2 of the JAMS International Rules provides that the last known place of business is valid absent notice of a change, which applies here. Article 28.3 further provides that a failure to comply with any direction of the Tribunal without a showing of good cause permits the Tribunal to draw the inferences it considers appropriate. Accordingly, the Arbitrator ordered Respondent to file a brief with "competent supporting evidence" by December 4, 2020 establishing such good cause, the bases of its claims of accidental receipt and apparent "scam," and demonstrating the availability of meritorious defense(s).

Instead of complying with this Order, Mr. Zumwinkle sent an email on December 4, 2020 that is completely devoid of any competent evidence to support the numerous "assumptions" contained therein, admitting that he has no first-hand knowledge, and failing to demonstrate the existence of potentially meritorious defenses. Instead, he unilaterally stated that given limited resources and the holiday season, Respondent could provide proper documentation by Feb. 28, 2021—almost three more months into the future after months of delay and long after the holiday season. Significantly, Respondent did so without seeking, much less obtaining, permission for such further lengthy delay. While he claimed that the employees previously involved including Mr. Fuehnen were laid off by last December, he again did not dispute Mr. Fuehnen's continued representation of himself as the CEO and Co-Founder of Loots on LinkedIn. (Claimant's Letter to Arbitrator dated December 9, 2020, Exh. C.)

Further, insofar as Mr. Zumwinkle claimed that the failure to respond is due to disruption caused by its insolvency, Claimant produced evidence of an earlier email by Loots to its subscribers regarding entering into preliminary insolvency proceedings due to "legal threats by one of the major players in our industry." (Id. at Exhibit A). Further, even after filing for insolvency, Mr. Fuehnen continued to acknowledge the pendency of this arbitration. (Id. at Exhibit B.). Also, insofar as he briefly raises Loot's own Terms of Service for use of its accounts, he fails to address how those could possibly apply instead of Twitch's claims here which arise from Twitch's Terms of Service and Developer Agreement, which Respondent and its personnel accepted on several occasions. In short, Mr. Zumwinkle's response utterly failed to establish good cause for Respondent's failure to comply with more than one order of the Tribunal, including the one addressed to him giving a last chance to delay entry of default judgment.

Accordingly, the Tribunal will proceed to address the merits of the long pending motion for default judgment. Further, the Tribunal accordingly will draw adverse inferences against Respondent which it deems appropriate in light of Respondent's failures to comply with its directions without good cause and pattern of obfuscation and delay.

As set forth below, Claimant's thorough motion for default judgment makes all the requisite showings for its requested relief, supported by competent evidence. It establishes that Respondent made unauthorized use of Twitch's services by offering an application which permits Twitch streamers and their viewers to run advertisements on Twitch's services, thereby misappropriating Twitch's services for its own commercial purposes and misleadingly suggesting an affiliation with or endorsement by Twitch. Doing so violated the user agreements Respondent entered into with Twitch and federal trademark law. Further, it continued to do so after multiple demands by Twitch to cease and promises to do so.

Twitch provides services that allow content creators to stream content and obtain a share of the revenue generated from advertising on their Twitch channels. First Amended Statement of Claims and Relief ("FASCR"), Paras. 2-4. Twitch owns rights in the TWITCH trademark (e.g.,

U.S. Registration No. 4275948 and U.S. App. Serial No. 86485231) and the "Glitch Logo" (e.g., U.S. App. Serial No. 86485295), as well as common law rights and international applications or registrations ("TWITCH Marks"). FASCR, Para. 6. It has used these marks in commerce since at least June 2012, and they have gained strong recognition including as exclusively associated with Twitch. Id., Paras. 6-8.

Twitch requires users to meet its terms and guidelines. By signing up for a user account on or about May 19, 2016, Respondent agreed to the Terms of Service, Trademark guidelines and other policies incorporated into the Terms of Service. FASCR, Para. 6; Declaration of Burhard Leimbrock, Para. 4. On or about September 13, 2018, Respondent signed up for a developer account to access Twitch Services and therefore agreed to the Developer Services Agreement. Leimbrock Decl., para 4. These terms contain numerous prohibitions and restrictions, including against collection of personal information about users without consent; accessing computer resources of Twitch via automated means; and using its services in violation of intellectual property law. Id., Ex. 1(a). They also prohibit use of its marks without written permission or in a way that suggests an affiliation with Twitch. Id. Ex. 2(b). Twitch's Developer Services Agreement further regulates the use of data collected through using its services. Id., Para. 9, EX. 3(a).

Respondent operates an ad serving platform known as Loots, also doing business under similar monikers like New.Loots, that streamers use to make ads appear during their broadcast. FASCR, Para. 14. It shares revenues with streamers for each such ad, with none of the revenue going to Twitch. Loots enables streamers to share a unique messaging page URL with their viewers, which allows viewers to send advertisements to a streamer which pop up in the streamer's live broadcast and are visible to all other Twitch users who are viewing that stream. Id., Para. 20; Leimbrock Decl., Para 14, Exh. 5. Respondent calculates its streamers' earnings based on factors such as the number of people who view the ads, using information harvested from Twitch by unauthorized methods, and then provides the improperly harvested data to advertisers. FASCR, Paras. 20-23. Respondent also uses the Twitch marks in commerce, as in

4

its pitch deck materials that suggest that its platform supports Twitch. Id., Paras 24-25; Leimbrock Decl., Para. 14, Exh. 5.

Twitch sent numerous communications to Respondent requesting that it cease and desist violation of its terms of service and infringement of its intellectual property, starting in March 2017, to no avail. FASCR, Paras. 29-36. For example, even after these communications, in January 2020, Loots used a pitch deck including the Twitch trademark and claiming it supported Twitch's network as well as others. Id., Para. 36; Leimbrock Decl. Ex 5.

Twitch has established its claim for breach of contract by showing that it had valid contracts with Respondent, its own performance thereof, Respondent's breach and resulting damage. See, e.g., Wall Street Network v. New York Times, 164 Cal.App.4th 1171, 1178 (2008). This conclusion is supported by the evidence submitted, in addition to the well pleaded allegations in the FASCR, which are taken as true after default except as to the amount of damages, see, e.g., Yelp Inc. v Catron, 70 F. Supp. 3d 1082, 1100 (N.D. Cal. 2014), and which the Tribunal also exercises its discretion to credit as true under Article 28.3. Respondent entered into contracts accepting the terms of use by registering an account with Twitch as well as using its services to use their advertising application Loots and send ads to Twitch users. The terms also incorporate the Trademarks Guidelines. Leimbrock Decl., Para 4. These Terms constitute a contract. FASCR Para. 39; Yelp, 70 F. Supp. 3d at 1099 (the Yelp terms of service is a contract). Twitch performed. FASCR, Para. 41. Respondent committed numerous breaches, such as using Twitch services for its own commercial purposes without permission; using other users' accounts to transmit audiovisual content to Twitch services; and using Twitch trademarks without written permission. FASCR, Paras. 23, 40; Leimbrock Decl., Ex. 1(a). The breaches harmed Twitch by impairing its ability to regulate the type of advertisers using its services as well as the use of its trademarks, and eroding its users' trust. FASCR. See Yelp, 70 F. Supp. 3d at 1099.

Similarly, Respondent breached the Developer Services Agreement which it accepted when it created a developer account and/or accessed Twitch's developer services. Leimbrock

Decl. Paras. 3-4.  This Agreement limits use of data collecting from using Twitch Services and bans the sale or sharing of such data with others without permission.  Respondent used and stored personal information about Twitch users without authorization, including using it for marketing, harming Twitch's ability to regulate the data provided to advertisers and eroding its good will.  FASCR, Paras. 26-27, 42.

Respondent also violated the Lanham Act by infringing Twitch's trademarks and engaging in unfair competition.  15 U.S.C. Sec. 1114 and 1125(a); see Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1178 (9th Cir. 1988) (test for unfair competition is the same as trademark infringement – the likelihood of deception or confusion by similarity of the marks).  Twitch has shown its ownership of valid marks and Respondent's use of such marks that is likely to cause confusion or deception.  FASCR; Leimbrock Decl., Ex. 5.  The ads fostered a substantial likelihood that consumers would be confused and deceived into believing that Respondent and its advertised products were affiliated with and/or endorsed by Twitch.  See, e.g., Twitch Interactive, Inc. v. Johnston, No. 16-CV-03404-BLF, 2019 WL 3387977, at *6 (N.D. Cal. July 26, 2019) (default judgment on Lanham Act claims for use of word TWITCH when offering bot packages in connection to Twitch's services as likely to cause confusion among users regarding the source of defendants' services).

Twitch has also established that this infringement was willful as Respondent did so knowingly and intentionally, despite repeated notices and broken promises to cease doing so, and continued even after this proceeding was initiated.  See, e.g., FASCR, Paras. 29-36.  Moreover, the Tribunal draws the inference of willfulness from Respondent's failure to defend and violations of the Tribunal's directives.

Respondent also tortiously interfered with Twitch's contractual relationships.  Twitch has shown that Respondent knew of Twitch's valid contracts with third parties under the Twitch Partnership and Affiliate programs, which gave exclusive rights to the initial broadcast of its users' content including the exclusive right to serve ads for a specified period, and engaged in intentional acts designed to disrupt and which did disrupt such relationships, resulting in damage.

See, e.g., Yelp, 70 F. Supp. 3d at 1099.  For example, Twitch publishes its Affiliate Agreement on its website.  Respondent harmed the user experience and eroded Twitch's good will.

Accordingly, Twitch has shown its claims are valid, entitling it to monetary as well as injunctive relief.  It seeks $1,488,000 in damages for trademark infringement, in the amount of Respondent's infringing profits, pursuant to 15 U.S.C. Sec. 1117(a).  In the absence of evidence from the infringer as to costs or other deductions to profits, the Claimant need only show revenue from sales which is deemed equivalent to lost profits.  See, e.g., Beachbody, LLC v Power Trade Direct, No. 17-CV-2093 (JEMx), 2017 WL 7806624 at *3 (C.D. Cal., Nov. 3, 2017).  Twitch has provided evidence estimating Respondent's annual sales at $1,240,000.  Palacios Decl. Para 10, Ex. 7.  Indeed, Respondent had estimated much higher revenue for 2017 of 4-5 Million Euros.  Leimbrock Decl. paras 12-13, Ex. 4.  However, Twitch is relying on the lower estimate in public records.  At least 40% of its annual sales derived from Twitch.  Leimbrock Decl., Paras 12-13, Ex. 4.  Therefore, Respondent obtained at least $496,000 in revenue from providing its services on Twitch, advertising through Twitch with ads that looked like ones approved by Twitch, and using Twitch's marks.

Further, damages up to three times actual damages may be awarded for willful misconduct, as here.  15 U.S.C. Sec. 1117(a); Allergan Inc. v. Mira Life Grp., Inc., No. SACV 04-36 JVS MLGX, 2004 WL 2734822 at *4 (C.D. Cal. June 9, 2004) ("Given Mira Life's intentional infringement of the BOTOX mark, and disregard of its prior agreement to cease use of the Mira Life Mark, trebling was both warranted and appropriate.").  Trebling damages is amply warranted here by Respondent's willful, repeated misconduct over many months.

Injunctive relief is also appropriate where, as here, liability is shown and there is a threat of future trademark infringement and breach of contract, and monetary relief alone is insufficient.  See, e.g., MAI Systems Corp. v. Peak Computer, Inc., 991 F.2d 511, 520 (9th Cir. 1993); 15 U.S.C. Sec. 1116(a); DVD Copy Control Ass'n., Inc. v. Kaleidescape, Inc., 176 Cal.App.4th 697, 722 (2009).  Pertinent is whether: the claimant has suffered irreparable harm; monetary damages are inadequate; the balance of hardships tips in favor of an injunction; and the

public interest also weighs in favor of one. eBay, Inc. v MercExchange, L.L.C., 547 U.S. 388, 391 (2006). These factors weigh in favor of a permanent injunction here. Twitch has suffered irreparable harm to its good will and Respondent's behavior shows a willingness to infringe deliberately, threatening further injury. See., e.g., Microsoft Corp. v. Buy More, Inc., 136 F.Supp.3d 1148, 1158 (C.D. Cal. 2015) (damage to goodwill is irreparable harm that cannot be compensated by monetary damages). The balance of hardships and the public interest in honoring intellectual property favors issuance of an injunction. See, e.g., Wecosign, Inc. v IFG Holdings, Inc., 845 F. Supp. 2d 1072, 1084 (C.D. Cal. 2012) (without an injunction, "Plaintiff will lose profits and goodwill, while an injunction will only proscribe Defendants' infringing activities."); Internet Specialties West, Inc. v. Milon-Digiorgio Enters, 559 F.3d 985, 993 (9th Cir. 2009).

Lastly, Twitch is entitled to its reasonable attorneys' fees and costs for its trademark claims as it has shown "exceptional circumstances" through Respondent's willful violation of 15 U.S.C. Sec. 1125(a)(1)(b), as well as its default, from which the Tribunal draws an adverse inference that its violations were committed knowingly and oppressively. It is also entitled to recover its costs for these claims. 15 U.S.C. Sec.1117(a)(3). Twitch is ordered to submit detailed records substantiating its reasonable attorneys' fees and costs within 2 weeks of this order.

In conclusion, the Tribunal grants Twitch's motion, awards damages in the sum of $1,488,000, will award reasonable attorney' fees and costs according to proof, and issues the following permanent injunction against Respondent and its officers, agents, representatives, employees, and successors and assigns, including but not limited to Loots Media GmbH, Fuehnen Holding GmbH, Marc Fuehnen, and the operators of its websites like loots.com and new.loots.com (or any other name or website incorporating Loots or that is confusingly similar to Loots), prohibiting them from:

    a.    Using the TWITCH Marks or any confusingly similar derivation thereof;

   b. Using or accessing Twitch Services, including through the knowing use of intermediaries; and

   c. Displaying, or causing others to display, advertisements via the Twitch Services in violation of applicable legal terms.

   IT IS SO ORDERED.

Dated: February 25, 2022

               *Elizabeth D. Laporte*
               Hon. Elizabeth D. Laporte (Ret.), Arbitrator

## PROOF OF SERVICE BY E-Mail

Re: Twitch Interactive, Inc. vs. Fishwoodco GmbH dba Loots
Reference No. 1110024636

I, Sandra Chan, not a party to the within action, hereby declare that on February 25, 2022, I served the attached AMENDED ORDER GRANTING DEFAULT JUDGMENT AGAINST RESPONDENT on the parties in the within action by electronic mail at San Francisco, CALIFORNIA, addressed as follows:

James E. Rosenfeld Esq.
Davis Wright Tremaine LLP
1251 Avenue of the Americas
21st Floor
New York, NY   10020
Tel: (212) 603-6455
Email: jamesrosenfeld@dwt.com
   Parties Represented:
   Twitch Interactive, Inc

Diana Palacios Esq.
Davis Wright Tremaine LLP
865 S. Figueroa St.
Suite 2400
Los Angeles, CA   90017
Tel: 213-633-6800
Email: dianapalacios@dwt.com
   Parties Represented:
   Twitch Interactive, Inc

Mr. Matthias Zumwinkel
Fishwoodco GmbH dba Loots
Karl-Heinrich-Ulrichs-Straße 24
Berlin,   10785
Germany
Email: matthias.zumwinkel@fishwood.co
   Parties Represented:
   Fishwoodco GmbH dba Loots
   Fishwoodco Inc.

Caesar D. Kalinowski Esq.
Davis Wright Tremaine LLP
920 Fifth Ave.
Suite 3300
Seattle, WA   98104-1610
Tel: 206-757-8232
Email: caesarkalinowski@dwt.com
   Parties Represented:
   Twitch Interactive, Inc

I declare under penalty of perjury the foregoing to be true and correct. Executed at San Francisco, CALIFORNIA on February 25, 2022.

_/s/ Sandra Chan_

Sandra Chan
JAMS
SChan@jamsadr.com