1  PETER S. DOODY (Bar No. 137837)
   doody@higgslaw.com
2  GEOFFREY M. THORNE (Bar No. 284740)
   thorneg@higgslaw.com
3  HIGGS FLETCHER & MACK LLP
   401 West A Street, Suite 2600
4  San Diego, CA  92101-7910
   Telephone:   (619) 236-1551
5  Facsimile:    (619) 696-1410

6  Attorneys for *Amici Curiae*
   LOOTS MEDIA GMBH, FUEHNEN
7  HOLDING GMBH, and MARC FUEHNEN

8

9              **UNITED STATES DISTRICT COURT**

10           **NORTHERN DISTRICT OF CALIFORNIA**

11                  **SAN JOSE DIVISION**

12

13  TWITCH INTERACTIVE, INC.,          Case No.: 22-cv-03218-VKD

14               Petitioner,           **MEMORANDUM OF POINTS
                                       AND AUTHORITIES ON**
15       v.                            **BEHALF OF AMICI CURIAE
                                       REGARDING TWITCH**
16  FISHWOODCO,                        **INTERACTIVE, INC.'S
                                       PETITION TO CONFIRM**
17               Respondent.           **ARBITRATION AWARD AND
                                       FOR ENTRY OF JUDGMENT**
18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

**Page**

3    I.    INTERESTS OF THE *AMICI CURIAE* ..................................................... 5

4    II.   INTRODUCTION ........................................................................................ 6

5    III.  BACKGROUND .......................................................................................... 7

6    IV.   ARGUMENT .............................................................................................. 12

7          A.    Legal Standard. ................................................................................. 12

8          B.    *De Novo* Review Applies and *Amici* Have Not Waived Their
                 Objection to Arbitrate ..................................................................... 13

9          C.    *Amici* are Not Bound by the Arbitration Agreement. ..................... 14

10               1.    *Amici* are not parties to the arbitration agreement. ............... 15

11               2.    *Amici* lack authority to represent Respondent under
                       German bankruptcy law .......................................................... 16

12               3.    *Amici* have otherwise not had an opportunity to
                       participate in or be heard in the arbitral proceedings ............ 19

13   V.    CONCLUSION .......................................................................................... 19

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

Page

**CASES**

American Exp. v. Italian Colors Restaurant
133 S.Ct. 2304 (2013) ...................................................................15

Arthur Andersen LLP v. Carlisle
556 U.S. 624 (2009) .......................................................................15

First Options of Chicago, Inc. v. Kaplan
514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) ..............14

GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC
140 S.Ct. 1637 (2020) ...................................................................15

Green Tree Fin. Corp. v. Bazzle
539 U.S. 444, 123 S.Ct. 2402 156 L.Ed.2d 414 (2003) .......................13

Immersion Corp. v. Sony Computer Entertainment America LLC, et al.
188 F.Supp.3d 960 (N.D. Cal 2016) .................................................12

Nat'l Ass'n of Broad. Employees & Technicians v. Am. Broad. Co.
140 F.3d 459 (2d Cir. 1998)............................................................14

Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.
559 U.S. 662, 130 S.Ct. 1758 (2010) ...............................................15

Thomson-CSF, SA v. Am. Arb. Ass'n
64 F.3d 773 (2d Cir. 1995) .............................................................15

United Steelworkers v. Warrior & Gulf Co.
80 S.Ct. 1347 (1960) .....................................................................15

Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.
126 F.3d 15, 21 (2d Cir. 1997).........................................................13

**STATUTES**

9 U.S.C. § 10(a) ...........................................................................13

9 U.S.C. §§ 201 et seq. ..................................................................12

**OTHER**

Article 240 of the ZPO ...................................................................17

Convention on the Recognition and Enforcement of Foreign Arbitral Awards ......12

1

**TABLE OF AUTHORITIES**
(continued)

2

3

**Page**

4

German Federal Fiscal Courts (*Bundesfinanzhof*, or BFH), Judgment dated July 6, 2011, Case Number II R 34/10 ............................................................................ 17

5

German Insolvency Act (*Insolvenzordnung*, or "InsO"), § 1 .................................. 16

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.

## <u>INTERESTS OF THE *AMICI CURIAE*</u>

Loots Media GmbH ("<u>Loots Media</u>") is a German limited liability company formed in 2019 specializing in social media channel marketing and online platform services. The company's Managing Director, or *Geschäftsführer*, is Marc Fuehnen, who oversees 15 employees. The Loots Media digital platform provides various applications and tools that help content creators manage and monetize their respective audiences, including bringing together creators and brands to engage in various forms of sponsorships. Alongside its competitors, Loots Media and others are striving to capture market share in a growing multi-billion-dollar industry.

While it is true that Loots Media shares the same name as the Respondent's alleged alias, the connection is only skin deep. The company that was later to become known as Loots Media was not incorporated until November 2019. The original name of the company was "aptus 1536. GmbH" and initially led by Ms. Cornelia Wendt, a German citizen and resident of Berlin, Germany. In February 2020, aptus 1536. GmbH officially acquired rights to the domain name "loots.com." The company's shareholders subsequently passed a resolution and changed the company's name to "loots Media GmbH" and appointed Marc Fuehnen as its Managing Director, which was registered on January 16, 2020.

Prior to then and now, Loots Media does not share any legal or business relationship with Fishwoodco ("<u>Respondent</u>"). The sole nexus was Marc Fuehnen, who no longer works for the Respondent and has not been able to represent the Respondent since 2019.

Fuehnen Holding GmbH ("<u>Fuehnen Holding</u>") is a German business entity formed in 2016 that focuses on asset acquisition, holding, and management. Marc Fuehnen serves as its Managing Director. No other individuals or entities, including the Respondent, are related legally or operationally to the business.

/ / /

Marc Fuehnen is a citizen and resident of Germany. His professional career has focused on software development. He has founded seven start-up businesses over the last several decades. Combining technical know-how with his business experience in the sector, Mr. Fuehnen has sought to establish Loots Media as a platform that helps content creators manage and monetize their audiences across a variety of social media platforms.

## II.

## INTRODUCTION

*Amici* file this *amicus* brief against supporting Petitioner's Petition to confirm and enforce the final arbitration awards as they relate to *Amici*. Without considering the arbitration agreement at issue, and without any factual basis referenced in the amended award, the sole arbitrator amended the award to extend injunctive relief to *Amici*. Critically, *Amici* were not privy to the arbitration agreement and did not participate in the arbitration. Therefore, the enforcement of the arbitral award would ensnare non-signatories to the arbitration agreement and relief granted despite their preclusion to enforce the same rights that were derived from the arbitration agreement in the first place.

As explained below, in cases where an arbitrator exceeded his or her powers from the arbitration agreement, federal district courts may vacate an award. This Court has *de novo* review over whether *Amici* were parties to the arbitration agreement—an objection to which *Amici* have not waived. Emphatically, *Amici* lacked privity to the underlying arbitration agreement. At no point did they ever sign, consent, or otherwise hold themselves out to be alter-egos or beneficiaries of the arbitration agreement. They were likewise not bound by an agency relationship, apparent authority, guaranty, succession, assignment, subrogation, ratification, or estoppel. At a fundamental level, they were not even capable to represent the Respondent in the proceedings and were denied access the arbitral record. It is precisely for these reasons that *Amici* submit the following *amicus* brief.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# III.

# BACKGROUND

This dispute involves an alleged agreement between Petitioner ("Twitch") and Respondent over the use of the former's platform services. The facts show that *Amici* have not participated in the arbitration and have otherwise objected to it in light of Petitioner's dogged pursuit of an illegitimately expansive arbitral award against non-signatories.

On August 20, 2019, Petitioner initiated JAMS-administered arbitral proceedings against Respondent, alleging intellectual property infringement and interference with Petitioner's services and third-party agreements.[1] As its basis for agreeing to arbitration, the Petitioner relied on, *inter alia*, its terms and service agreements, one of which reads:[2]

> You and Twitch agree to arbitrate any dispute arising from these Terms of Service or your use of the Twitch Services, except that you and Twitch are not required to arbitrate any dispute in which either party seeks equitable and other relief for the alleged unlawful use of copyrights, trademarks, trade names, logos, trade secrets, or patents. ARBITRATION PREVENTS YOU FROM SUING IN COURT OR FROM HAVING A JURY TRIAL. You and Twitch agree that you will notify each other in writing of any dispute within thirty (30) days of when it arises. Notice to Twitch shall be sent to: Twitch Interactive, Inc., Attn: Legal, 350 Bush Street, 2nd Floor, San Francisco, CA 94104. You and Twitch further agree: to attempt informal resolution prior to any demand for arbitration; that any arbitration will occur in Santa Clara County, California; that arbitration will be conducted confidentially by a single arbitrator in accordance with the rules of JAMS; and that the state or federal courts in Santa Clara County, California have exclusive jurisdiction over any appeals of an arbitration award and over any suit between the parties not subject to arbitration. Other than class procedures and remedies discussed below, the arbitrator has the authority to grant any remedy that would otherwise be available in court. Any dispute between the parties will be governed by this Agreement and the laws of the State of California and applicable United States law, without giving effect to any conflict of laws principles that may provide for the application of the law of another jurisdiction. Whether the

---

[1] *Twitch Interactive, Inc. v. Fishwoodco GmbH d/b/a Loots* (JAMS Ref. No. 1110024636). Three awards were rendered on January 4, 2021, May 7, 2021, and February 25, 2022, respectively.

[2] *See* Gimbel Decl. Exs. 1 & 2 (Terms of Service) and Gimbel Decl. Exs. 3 & 4 (Trademark Guidelines).

- 7 -                                    CASE NO. 22-CV-03218-VKD

dispute is heard in arbitration or in court, you and Twitch will not commence against the other a class action, class arbitration, or other representative action or proceeding.

On September 10, 2019, on behalf of the Respondent, Mr. Fuehnen received notice of the commencement of proceedings purportedly against it. On September 11, 2019, Mr. Fuehnen contacted Mr. Jordan Gimbel, Head Counsel at Petitioner, to discuss a possible settlement.

On October 22, 2019, the Respondent filed for bankruptcy in Germany due to its inability to pay various creditors. On October 29, 2019, Mr. Gimbel wrote to Mr. Fuehnen confirming that he had been informed about the bankruptcy filing. Because Mr. Fuehnen still acted as the Managing Director at that time, both he and Mr. Gimbel decided to proceed with settlement discussions.

Although Mr. Fuehnen attempted to expedite the discussions, progress moved slowly. Indeed, while Mr. Fuehnen remained as Managing Director, he reliably communicated with Petitioner and was determined to come to an amicable resolution.

On November 6, 2019, Mr. Gimbel informed Mr. Fuehnen that he was collaborating with counsel to draft the settlement terms. Mr. Fuehnen received the first draft on November 14, 2019.

Between November 14 and December 12, 2019, Mr. Gimbel and Mr. Fuehnen sent a series of exchanges that refined the terms of the settlement. Although the signing date was initially scheduled for December 16, 2019, it was subsequently postponed to December 20, 2019. On that day, however, Mr. Gimbel did not respond. At the same time, JAMS representatives were inquiring to Mr. Fuehnen about the status of the discussions. Mr. Fuehnen therefore wrote to Mr. Gimbel seeking an update.

On December 21, 2019, Mr. Gimbel asked for more time, as he was waiting for final approval. However, on December 23, 2019—two days before Christmas— Mr. Fuehnen was fired by Respondent's administrator, Mr. Sebastian Laboga, who

was serving as the interim insolvency administrator until the bankruptcy proceedings formally commenced. From that moment on, Mr. Fuehnen lacked any legal capacity to represent Respondent. In fact, he could not even access company emails or servers. Therefore, he was accordingly never involved in the arbitration as an individual party and could not continue to represent Respondent in any manner following the termination of his employment.

Following Mr. Fuehnen's departure from Respondent, neither JAMS, Petitioner, nor any other participant to the arbitration contacted Mr. Fuehnen about his participation in the proceedings. It is clear, then, that Mr. Fuehnen's limited initial involvement in the arbitration was limited to a representational role in settlement negotiations at the outset of the case.

On December 30, 2019, the insolvency proceedings formally commenced and Mr. Sebastian Laboga was appointed as the official insolvency administrator.[3] The bankruptcy proceedings were publicized and accessible through public registries and publication platforms. In fact, Petitioner's counsel, Mr. Gimbel, acknowledged his awareness of the bankruptcy to Mr. Fuehnen as early as October 29, 2019. The proceedings are also, as far as *Amici* are aware, currently ongoing. None of the *Amici* have otherwise been involved in the bankruptcy proceedings.

Under German insolvency law, from the time he or she is appointed, the insolvency administrator has the unrestricted authority to handle the liquidation of the business's assets and is the single authorized representative to act or represent Respondent in any legal proceedings undertaken against it.[4] Therefore, from the day he was fired on December 23, 2019, Mr. Fuehnen no longer retained legal status to represent Respondent. Conversely, since December 30, 2019, Mr. Laboga, as

---

[3]     According to the court decisions, Mr. Laboga's address is Karl-Heinrich-Ulrichs-Strasse 24, 10785 Berlin, Germany.
[4]     Letter from Dr. Joseph Schwartz on behalf of Marc Fuehnen to Ms. Diana Palacios at Davis Wright Tremaine, LLP, dated 8 December 2022, paras. 21-26.

insolvency administrator, acts as the sole representative to handle Respondent's business affairs.

Critically, at no point in the arbitration was a party other than Fishwoodco named as a respondent. Following Mr. Fuehnen's termination from Respondent, no participant to the arbitration contacted him on an individual basis or on behalf of *Amici* to appear as a separate party to the arbitration. Even if were presumed that Mr. Fuehnen may have continued to recognize the pendency of the arbitration, it does not negate his attempts to contest its jurisdiction over him or *Amici*.

Nevertheless, on September 24, 2020, the Petitioner filed a Motion for Default Judgment. In response, Mr. Matthias Zumwinkle—who is unknown to *Amici* or how he relates to Respondent—appeared in the proceedings to inform the participants that (1) Respondent was still insolvent and (2) Mr. Fuehnen no longer represented the company as its Managing Director.

With no appearance from Respondent or participation from *Amici* as non-signatories, the sole arbitrator rendered a default award on January 4, 2021. Ruling in favor of Petitioner, the sole arbitrator awarded monetary damages for Respondent's purported breaches of Petitioner's commercial services. A permanent injunction was also ordered against "[Fishwoodco] and its officers, agents, representatives, employees, and successors and assigns" from using Petitioner's services or accessing such services through an intermediary.

According to the Petition filed in this case, a second, presupposed amended award was rendered on May 7, 2021. However, *Amici* never received or was notified of this second award. This is because, despite attempts to see the casefile, JAMS restricted access because *Amici* were non-signatories. Even today, *Amici* has not seen the arbitral casefile or case chronology.

On October 20, 2021, Petitioner wrote to the sole arbitrator to request an amended order. It requested an explicit extension of the permanent injunction to *Amici* without naming them as a party to the proceedings or notifying them in kind.

1   To *Amici*'s knowledge, no factual or evidentiary showing whatsoever was made to

2   justify their inclusion into the arbitral award.

3       On February 25, 2022, the sole arbitrator amended the award to explicitly

4   include *Amici*. The injunction now stipulates:

5       "[T]he Tribunal grants Twitch's motion […] and issues the
        following permanent injunction against Respondent and its
6       officers, agents, representatives, employees, and successors and
        assigns, including but not limited to Loots Media GmbH, Fuehnen
7       Holding GmbH, Marc Fuehnen, and the operators of its websites
        like loots.com and new.loots.com (or any other name or website
8       incorporating Loots or that is confusingly similar to Loots)[.]"

9       On June 2, 2022, Petitioner filed the instant action to confirm the arbitral

10  award. It has wrongfully attempted on several occasions, including by personal

11  email, to authorize service of process on the Respondent through Marc Fuehnen—

12  who since 2019 had not been a participant in the proceedings or had otherwise been

13  contacted by the arbitration's participants—rather than the bankruptcy

14  administrator. While *Amici* do not and cannot speak for the Respondent, service of

15  process by email runs contrary to German public policy. As for *Amici*, they were

16  never notified, participated in, or were served with the arbitral proceedings at any

17  time.

18      It was not until October 2022 that Loots Media learned from a contractual

19  partner that Petitioner was alleging the existence of an arbitral award against it.

20  Finally made aware of this issue, Loots Media wrote to JAMS on two occasions

21  requesting copies of the casefile.[5] Concurrently, it contacted Petitioner's counsel on

22  December 8, 2022, to reiterate the award's misconduct on *Amici* as non-

23  participants.

24      On January 4, 2023, JAMS responded to Loots Media, confirming that it was

25  not a party or representative in the arbitration, and therefore could not review the

26  casefile. Therefore, *Amici* do not have access to the arbitral casefile or were given

27  an opportunity to participate in the arbitration. Yet the injunctive relief now seeks

28

---

5       October 20, 2022, and December 8, 2022, respectively.

to impose obligations against *Amici* from the same basis that *Amici* lacked authority to intervene: the arbitration agreement.

**IV.**

**ARGUMENT**

Arbitration is fundamentally a matter of contract. Except for rare instances, only signatories to an arbitration agreement are bound by it. Similarly, officers and directors who have executed an arbitration agreement will not personally be privy to it. Consequently, it is only the parties to an arbitration agreement who are subject to the arbitrators' awards of relief.

The extension of injunctive relief against *Amici* as non-signatories exceeds the sole arbitrator's authority for three reasons. First, the Federal Arbitration Act ("FAA") permits vacatur where an arbitral tribunal exceeded its powers. Second, *de novo* review applies and *Amici* have not waived their objection to arbitrate. Third, common law principles of contract do not apply to bind *Amici* as non-signatories.

**A.     Legal Standard.**

Petitioner seeks to confirm the award consistent with the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), as implemented by the FAA, at 9 U.S.C. §§ 201 *et seq*. The award falls under the New York Convention because it arises "out of a legal relationship … which is considered as commercial" and involves *Amici*, who are not citizens of or incorporated in the United States. *Id*. at § 202. This Court must confirm the award "unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." *Id*. at § 207.

Article V(1)(e) of the New York Convention provides that a court may refuse to confirm an award that has been "set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made." This Court has previously considered arguments for vacatur under, *inter alia*, the domestic standard for review under the FAA. *Immersion Corp. v. Sony Computer*

*Entertainment America LLC, et al.*, 188 F.Supp.3d 960 (N.D. Cal 2016); *see also Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 21 (2d Cir. 1997) ("We read Article V(1)(e) of the [New York] Convention to allow a court in the country under whose law the arbitration was conducted to apply domestic arbitral law, in this case the FAA, to a motion to set aside or vacate that arbitral award.").

Accordingly, the FAA under 9 U.S.C. § 10(a) permits vacatur of an arbitration award in the following cases:

(1) "Where the award was procured by corruption, fraud, or undue means;

(2) Where there was evident partiality or corruption in the arbitrators, or either of them;

(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

*Amici* therefore move to vacate the arbitration award under clause 10(a)(4) of the FAA insofar as the injunctive relief granted by the sole arbitrator exceeded her authority to bind non-signatory third parties who otherwise did not participate in the proceedings. *Amici* cannot and do not legally represent the Respondent.

**B.    *De Novo* Review Applies and *Amici* Have Not Waived Their Objection to Arbitrate.**

Whether *Amici* were a party to the arbitration agreement or otherwise bound by it is a question of arbitrability. *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452, 123 S.Ct. 2402 156 L.Ed.2d 414 (2003) (questions of arbitrability "include certain gateway matters, such as whether the parties have a valid arbitration agreement at all."). It is clear from the Respondent's terms and service agreements that *Amici* did not sign the agreement. Given that there is no "clear and

unmistakable" evidence that the parties agreed to arbitrate arbitrability, this Court reviews *de novo* the sole arbitrator's decision that *Amici* are bound by the arbitration agreement despite their non-signatory status. *See generally First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).

At no point did *Amici* waive their objections to the sole arbitrator's jurisdiction. To the contrary, *Amici* were never properly served or were otherwise permitted to participate in the arbitration. Marc Fuehnen consistently objected to the sole arbitrator's jurisdiction and continues to do so in the current proceedings. *See, e.g.*, *Nat'l Ass'n of Broad. Employees & Technicians v. Am. Broad. Co.*, 140 F.3d 459, 462 (2d Cir. 1998) (holding that even when a party "does not seek to enjoin the arbitration," as *Amici* chose not to do, "it can raise the arbitrability issue in a judicial confirmation proceeding."). The mere fact that *Amici* contests the sole arbitrator's jurisdiction does not indicate a willingness to be bound by the arbitral award. *First Options of Chicago, Inc.*, 514 U.S. at 946, 115 S.Ct. 1920 ("merely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue, *i.e.*, a willingness to be effectively bound by the arbitrator's decision on that point.

**C.    *Amici* are Not Bound by the Arbitration Agreement.**

*Amici* are not required to arbitrate for the simple fact that they were not a party to the underlying arbitration agreement. They did not sign the arbitration agreement. They are not listed as a party to the arbitration agreement. There are no other claims or allegations made that they are otherwise bound to the arbitration agreement. They were likewise never given proper notice or opportunity to participate in the arbitration. Under this basis, *Amici* plainly do not fall within the terms of the arbitration agreement.

Nevertheless, the sole arbitrator attempts to stretch the arbitration agreement to encircle *Amici* to grant injunctive relief. But by forcing *Amici* to arbitrate, the

sole arbitrator's prerogative goes beyond a party's right to choose to arbitrate in the first place.

### 1. *Amici* are not parties to the arbitration agreement.

It is axiomatic that arbitration is fundamentally consensual in nature. *United Steelworkers v. Warrior & Gulf Co.*, 80 S.Ct. 1347, 1353 (1960) ("For arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."); *American Exp. v. Italian Colors Restaurant*, 133 S.Ct. 2304, 2309 (2013) ("[…] arbitration is a matter of contract […] courts must 'rigorously enforce' arbitration agreements according to their terms, […] including that specify *with whom* [the parties] chose to arbitrate their disputes.") (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 683, 130 S.Ct. 1758 (2010)). In most cases, parties to an arbitration agreement are only those who have formally executed, and expressly assumed the status of parties to, the underlying contract containing the arbitration clause. There is no question that *Amici* did not sign the agreement.

In fewer cases, entities that have not formally executed an arbitration agreement may be bound as a non-signatory. *See Thomson-CSF, SA v. Am. Arb. Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995) ("[A] non-signatory may be bound to an arbitration agreement if so dictated by the 'ordinary principles of contract and agency.'"). Non-signatories may be bound to arbitration agreements through assumption, piercing of the corporate veil, alter ego, incorporation by reference, third-party beneficiary status, waiver and estoppel. *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S.Ct. 1637, 1643-44 (2020) (quoting *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009)). At no point did *Amici* conduct any business in an individual capacity that is relevant to the arbitral dispute or take over any contractual agreements involving Petitioner or Respondent. To *Amici*'s knowledge, there has likewise been no claim made or arguments proffered in the arbitration or now that *Amici* are bound as non-

signatories. *Amici* are independent individuals and entities having no commercial or legal relationship with Petitioner or Respondent.

    2.    *Amici* lack authority to represent Respondent under German <u>bankruptcy law.</u>

Even so, *Amici* are not in a position legally to be privy to the arbitration agreement. They therefore do not qualify as officers, agents, representatives, employees, successors or assigns, or any other non-signatory otherwise bound by the arbitration agreement. In the case of Mr. Fuehnen as the former Managing Director of Respondent, this applies to German bankruptcy law.

During German insolvency proceedings, important legal changes occur that directly affect creditors, claims, and representation.

First, German insolvency proceedings serve the collective satisfaction of a debtor's creditors. German Insolvency Act (*Insolvenzordnung*, or "InsO"), § 1. This goal shall not be interrupted by legal proceedings against the company, as this would threaten the collective debtor's interest. Only the appointed insolvency administrator could represent Respondent in legal proceedings:

> "As a result of the opening of insolvency proceedings, the debtor's right to manage and dispose of the assets belonging to the insolvency estate shall pass to the insolvency administrator."[6]

German courts have confirmed that the administrator's "right to manage and dispose of the assets" under InsO, § 80(1) includes the exclusive right to represent the insolvent company in legal proceedings:

> "Pursuant to section 80 I InsO, the debtor loses the power to administer and dispose of his assets belonging to the insolvency estate upon commencement of the insolvency proceedings. At the same time, the right of administration and disposal passes to the insolvency administrator. With the right of administration and disposal, the insolvency administrator obtains the authority to conduct proceedings concerning the insolvency estate. In proceedings, the insolvency administrator has the unrestricted capacity to conduct proceedings by virtue of statutory procedural

---

[6]    Germany Insolvency Act, § 80(1). (Translation for convenience.)

HIGGS FLETCHER & MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

1     autonomy to the exclusion of the debtor. The debtor is not
2     authorized to conduct the proceedings."[7]

3          The administrator's authority to represent the indebted company begins at the

4     opening of insolvency proceedings:

5          "Consequently, since the opening of the insolvency proceedings on
      22 January 2007, it is no longer the defendant but the insolvency
6     administrator [...] who is authorized to conduct passive
      proceedings concerning the insolvency estate [....]"[8]
7

8          Therefore, since December 30, 2019, when insolvency proceedings

9     commenced, Mr. Laboga as administrator became the sole representative of

10    Respondent in any litigation or arbitration filed against Fishwoodco. Mr.

11    Fuehnen—who was no longer employed at Fishwoodco by that time—was not

12    permitted do so without the mandatory involvement of Mr. Laboga.

13         To avoid procedural issues, the German Code of Civil Procedure ("ZPO")

14    ensures procedural security by staying all court proceedings against the insolvent

15    company. Article 240 of the ZPO reads:

16         "In the event of insolvency proceedings being opened against a
      party, the proceedings shall be interrupted to the extent they
17    concern the insolvent estate until they can be resumed in
      accordance with the rules applying to the insolvency proceedings,
18    or until the insolvency proceedings are terminated. The same shall
      apply if the authority to manage the debtor's assets and the power
19    to dispose over them devolves upon a preliminary insolvency
      administrator." (Translation for convenience.)
20

21         Claims against the insolvent company concern the insolvent estate because, if

22    found against the company, another debtor would be added to the debtor collective

23    without having taken part in the proper procedure under insolvency law. This would

24    automatically threaten the debtor collective's position and thereby contradict the

25    main goal of insolvency proceedings.

26

27    ---
      [7]      German Federal Fiscal Courts (*Bundesfinanzhof*, or BFH), Judgment dated July 6, 2011,
      Case Number II R 34/10, at paragraph 2. (Translation for convenience.)
28    [8]      Higher Regional Court Jena, Judgment dated June 17, 2009, Case Number 4 U 788/08.
      (Translation for convenience.)

Therefore, any claims against the Respondent must be addressed to the bankruptcy administrator. *Amici*, bearing no legal relationship to Respondent, could not act on its behalf. This is particularly true for Mr. Fuehnen.

First, from the moment that Mr. Laboga became administrator, all rights and obligations that Mr. Fuehnen previously enjoyed as Managing Director expired. He could no longer speak for, hold himself out to be manager of, control, or oversee the affairs of Respondent. He was no longer involved in company operations. He could not even withdraw a penny from the company's bank account or access Respondent's company emails. Therefore, his rights and duties as Managing Director or *Geschäftsführer* were limited to availing himself to the administrator for information and questioning.

Second, any purported harm by Respondent occurring before, during and after the bankruptcy that imputes *Amici* would hang like a sword of Damocles. Not only would pre-existing claims have to be addressed to the bankruptcy administrator under German law, but *Amici* would be burdened by any alleged harm occurring *during* the bankruptcy without being heard in the arbitration. From what little documentation *Amici* have, Petitioner appears intent on harming *Amici*'s livelihood and business value through any means, including harassment with existing contractual relations. The consequences are pernicious. If any of the alleged wrongs purported against Respondent took place after the commencement of bankruptcy proceedings, then any relief would apply against *Amici* personally despite having no authority to intervene. Although such relief may be commonplace under the Federal Rules of Civil Procedure, it violates the cornerstone of consent for arbitration.

/ / /

/ / /

/ / /

/ / /

3.      *Amici* have otherwise not had an opportunity to participate in or be heard in the arbitral proceedings.

Even if *Amici* had elected to waive their objection to jurisdiction, which is not the case, the extension of injunctive relief against them caused severe prejudice by not being able to participate in the arbitration. This was made clear by the JAMS case manager when she confirmed that Loots Media was not a party or representative in the arbitration:[2]

> "Your correspondence confirms that you and your client were not a party to or representative on this arbitration. Accordingly, JAMS is unable to provide you with the documents you have requested related to this matter."

To this day, *Amici* have never received access to the case file or received any documents from JAMS pertaining to the arbitration.

Additionally, none of the few documents furnished to *Amici* include proof of service. *Amici* have also not been involved in or parties to the arbitration or current litigation. For example, the award dated February 25, 2022, was served on Matthias Zumwinkel on behalf of Respondent—not *Amici*. Loots Media never received notice and only learned from a contractual partner in October 2022 that Petitioner was alleging the existence of an adverse award against it. To say this is a due process violation needs no further elaboration.

## V.

## CONCLUSION

For the reasons stated above, *Amici* respectfully request that the Court (1) hold that sole arbitrator exceeded her scope of authority by binding *Amici* as third-parties to the arbitral award; and (2) enter an Order vacating the award upon the application of *Amici*.

/ / /

---

[9]   Letter from JAMS to Dr. Schwartz on behalf of Loots Media GmbH dated January 4, 2022.

In the alternative, the Court should vacate and remand the arbitral award to the sole arbitrator to expressly exclude *Amici* from the permanent injunctive relief granted.

Dated:  March 16, 2023                    HIGGS FLETCHER & MACK LLP


By:   /s/ *Peter S. Doody*
PETER S. DOODY
GEOFFREY M. THORNE
Attorneys for *Amici Curiae*
LOOTS MEDIA GMBH,
FUEHNEN HOLDING GMBH,
AND MARC FUEHNEN