UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TWITCH INTERACTIVE, INC., <br> Plaintiff, <br> v. <br> FISHWOODCO GMBH DBA LOOTS, <br> Defendant. | Case No. 22-cv-03218-VKD <br><br> **ORDER FOR REASSIGNMENT TO A DISTRICT JUDGE; REPORT AND RECOMMENDATION RE MOTION FOR DEFAULT JUDGMENT AND MOTION FOR LEAVE TO FILE AMICUS BRIEF** <br><br> Re: Dkt. Nos. 23, 26 |

Petitioner Twitch Interactive, Inc. ("Twitch") filed this action, seeking an order confirming final arbitration awards issued in the matter of *Twitch Interactive, Inc. v. Fishwoodco GmbH d/b/a Loots*, JAMS Ref. No. 1110024636, as well as the entry of judgment on those awards. Dkt. No. 1. Respondent Fishwoodco GmbH, doing business as Loots ("Loots"), failed to appear in this action, and the Clerk of the Court entered its default. Dkt. No. 20.

Twitch now moves for default judgment. Dkt. No. 26. The Court has not received any response to that motion, and the time for filing one has passed The Court received a motion for leave to file an amicus brief by Loots Media GmbH, Fuehnen Holding GmbH, and Marc Fuehnen regarding Twitch's underlying petition to confirm the arbitration awards and for entry of judgment. Dkt. No. 23. Twitch opposes that motion. Dkt. No. 27.

The Court held a hearing on May 30, 2023. Twitch appeared. Counsel for Loots Media GmbH, Fuehnen Holding GmbH, and Mr. Fuehnen also made an appearance with respect to the motion for leave to file an amicus brief. No one appeared on behalf of Loots.

Twitch has consented to proceed before a magistrate judge. Dkt. No. 11. However, Loots has not appeared and is in default. This Court therefore does not have the consent of all parties.

*See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; *Williams v. King*, 875 F.3d 500 (9th Cir. 2017). Accordingly, the Court directs the Clerk of the Court to reassign this action to a district judge, with the following report and recommendation that the motion for leave to file an amicus brief be denied and that Twitch's motion for default judgment be granted.

**REPORT AND RECOMMENDATION**

**I.  BACKGROUND**

According to its petition,[1] Twitch is a Delaware corporation based in San Francisco, California, that provides a service for content creators to stream content as part of an online social, interactive community. *See* Dkt. No. 3-2 ¶¶ 1, 7. Twitch owns rights in the TWITCH trademark and "Glitch Logo." *Id.* ¶ 10.

Twitch users are required to accept and comply with Twitch's Terms of Service ("TOS") and guidelines. *Id.* ¶ 9. Streamers may monetize their content on Twitch through participation in the Twitch Affiliate or Twitch Partnership programs, which enable streamers to obtain a share of the advertising revenues on their Twitch channels. *Id.* ¶ 8; Dkt. No. 1-2 ¶ 3.

Twitch says that Loots is a German corporation with its principal place of business in Germany. Dkt. No. 3-2 ¶ 2; Dkt. No. 26-1 ¶ 3. According to the petition, Loots also conducts business under similar names, such as New.Loots. Dkt. No. 3-2 ¶ 11. Twitch claims that Loots provides an ad-serving platform that enables streamers to make advertisements appear during the streamers' broadcasts, with the advertising revenues being shared by the streamers and Loots, and no revenue going to Twitch. *See id.* ¶¶ 11, 12; *see also* Dkt. No. 3-7 at ECF 7, 21. Loots reportedly "calculates its streamers' earnings based on factors such as the number of people who view the ads, using information harvested from Twitch by unauthorized methods, and then provides the improperly harvested data to advertisers." Dkt. No. 3-2 ¶ 12. Additionally, Twitch says that Loots uses "the Twitch marks in commerce, including in pitch deck materials that suggest that the platform supports Twitch." *Id.*; *see also* Dkt. No. 3-7 at ECF 7, 21-22.

---

[1] Although Twitch initially filed portions of its petition under seal, this Court subsequently granted Twitch's motion to unseal the petition and arbitration materials. Dkt. No. 22.

2

According to Twitch, Loots signed up for a Twitch user account in May 2016 and, in doing so, agreed to Twitch's TOS, Trademark Guidelines, and other policies incorporated into the TOS. Dkt. No. 3-2 ¶ 13; Dkt. No. 1-2, Exs. A-D. In September 2018, Loots reportedly also signed up for a developer account to access Twitch's services, thereby agreeing to Twitch's Developer Services Agreement. Dkt. No. 3-2 ¶ 13; *see also* Dkt. No. 1-2, Exs. E & F.

### A.     JAMS Arbitration Proceedings

In March 2017, Twitch began sending communications to Loots, requesting that Loots cease and desist violations of Twitch's TOS and infringement of Twitch's intellectual property. Dkt. No. 3-2 ¶ 16. Claiming that Loots failed to heed those communications, on August 20, 2019, Twitch initiated JAMS arbitration proceedings in Santa Clara County, California pursuant to the following provision in Twitch's TOS:

> 8. Applicable Law and Venue
>
> PLEASE READ THE FOLLOWING PARAGRAPH CAREFULLY BECAUSE IT REQUIRES YOU TO ARBITRATE DISPUTES WITH TWITCH AND LIMITS THE MANNER IN WHICH YOU CAN SEEK RELIEF FROM TWITCH.
>
> You and Twitch agree to arbitrate any dispute arising from these Terms of Service or your use of the Twitch Services, except that you and Twitch are not required to arbitrate any dispute in which either party seeks equitable and other relief for the alleged unlawful use of copyrights, trademarks, trade names, logos, trade secrets, or patents. ARBITRATION PREVENTS YOU FROM SUING IN COURT OR FROM HAVING A JURY TRIAL. You and Twitch agree that you will notify each other in writing of any dispute within thirty (30) days of when it arises. Notice to Twitch shall be sent to Twitch Interactive, Inc., Attn: Legal, 225 Bush Street, 9th Floor, San Francisco, CA 94104. You and Twitch further agree: to attempt informal resolution prior to any demand for arbitration; that any arbitration will occur in Santa Clara County, California; that arbitration will be conducted confidentially by a single arbitrator in accordance with the rules of JAMS; and that the state or federal courts in Santa Clara County, California have exclusive jurisdiction over any appeals of an arbitration award and over any suit between the parties not subject to arbitration. Other than class procedures and remedies discussed below, the arbitrator has the authority to grant any remedy that would otherwise be available in court. Any dispute between the parties will be governed by this Agreement and the laws of the State of California and applicable United States law, without giving effect to any conflict of laws principles that may provide for the application of the law of another jurisdiction. Whether the dispute is heard in arbitration or in court, you and Twitch will not commence against the other a class action, class

1    arbitration or other representative action or proceeding.

2    Dkt. No. 1-2 ¶ 4, Ex. A at ECF 11; *see also* Dkt. No. 3-2 ¶¶ 16, 17; Dkt. No. 3-3 ¶ 2.  The JAMS
3    tribunal consisted of a single arbitrator, Hon. Elizabeth D. Laporte (ret.), who presided over the
4    proceedings.  In the arbitration, Twitch asserted claims for Lanham Act violations, and breach of
5    Twitch's TOS, Trademark Guidelines, and Developer Services Agreements, as well as for tortious
6    interference with contractual relationships.  *See* Dkt. No. 3-7; Dkt. No. 26-1 ¶ 7.  Twitch sought
7    monetary damages, injunctive relief, and attorneys' fees and costs.  *See* Dkt. No. 3-7; Dkt. No. 26-
8    1 ¶ 7.

9    Loots initially appeared and participated in the arbitration through its representative, Mr.
10   Fuehnen, and successfully requested that the arbitration be conducted pursuant to JAMS
11   International Rules.  Dkt. No. 3-2 ¶ 18.  However, Loots subsequently "fell silent," did not inform
12   JAMS of any change in its representation or address, and missed the deadline for submitting its
13   Statement of Defense.  *See* Dkt. No. 3-2 ¶ 19; Dkt. No. 3-7 at ECF 3, 18; Dkt. No. 26-1 ¶ 8.  After
14   Twitch moved for a default judgment in the arbitration proceedings in September 2020, Loots
15   reappeared through a different representative, who claimed that he accidentally received Twitch's
16   motion for default judgment, but who nonetheless did not dispute proper service of that motion or
17   update Loots's address.  Although given a further opportunity to submit a brief establishing,
18   among other things, the availability of meritorious defenses, Loots failed to comply with the
19   tribunal's order to do so.  Dkt. No. 3-2 ¶¶ 21-22; Dkt. No. 3-7 at ECF 3-4, 18-19; Dkt. No. 26-1
20   ¶ 9.

21   The tribunal proceeded to address Twitch's motion for default judgment, finding that
22   Twitch made "all the requisite showings for its requested relief, supported by competent
23   evidence."  *See* Dkt. No. 3-7 at ECF 5-9, 20-24; *see also* Dkt. No. 3-2 ¶¶ 23-27.  On January 4,
24   2021, the tribunal granted Twitch's motion for default judgment, awarded $1,488,000 in damages,
25   stated that attorneys' fees and costs would be awarded according to proof, and issued an injunction
26   prohibiting "Respondent [i.e., Fishwoodco GmbH doing business as Loots] and its officers,
27   agents, representatives, employees, and successors and assigns" from "[u]sing the TWITCH
28   Marks or any confusingly similar derivation thereof; [u]sing or accessing Twitch Services,

United States District Court
Northern District of California

4

including through the knowing use of intermediaries; and "[d]isplaying, or causing others to display, advertisements via the Twitch Services in violation of applicable legal terms." *See* Dkt. No. 3-7 at ECF 11-12; Dkt. No. 3-2 ¶ 28; Dkt. No. 26-1 ¶ 10. On May 7, 2021, the tribunal awarded Twitch $59,165.36 in attorneys' fees and $16,010.83 in costs, for a total of $75,176.19. Dkt. No. 3-2 ¶ 29; Dkt. No. 3-7 at ECF 14-17; Dkt. No. 26-1 ¶ 10.

Twitch claims that Loots nonetheless persisted with its unlawful conduct based on the "continued operation of the exact same scheme but under a slightly altered name (New.Loots)." Dkt. No. 3-2 ¶ 30. For example, during the arbitration, Twitch produced to the tribunal evidence of an email Twitch says Loots sent to its subscribers, indicating that Loots entered into bankruptcy proceedings due to "legal threats by one of the major players in our industry." Dkt. No. 3-7 at ECF 5, 20; Dkt. No. 31-2 ¶ 2 & Ex. A. Twitch says that it learned that Loots "shut down the Loots website in order to start up nearly identical behavior under a new corporate structure and similar name: New.Loots," informing its users via Twitter that it was migrating its primary service to a new location as early as March 2020. Dkt. No. 26-1 ¶ 11. According to Twitch, online records relating to the registration for New.Loots showed that the company was being operated as Loots's successor through Mr. Fuehnen, "with the new website (new.loots.com) being hosted at the same exact[] URL as the old one (www.loots.com), except that the previous prefix (www.) was replaced with (new.) attached to the same domain (loots.com)." *Id*. ¶ 12. Additionally, Twitch says that the New.Loots support team still operated its email service from Loots's original domain. *Id*. Twitch maintains that Mr. Fuehnen was and remains the relevant agent for Loots/New.Loots. Here, Twitch's counsel avers that "New.Loots was reestablished under the corporate umbrella of an entity called Loots Media GmbH, a holding company which German government registry documents show was also managed by Mr. Fuehnen, and which was in turn wholly owned by Fuehnen Holding GmbH, another company owned by Mr. Fuehnen." *Id*. ¶ 13. Twitch's counsel avers that New.Loots remains active at new.loots.com. *Id*. ¶ 12.

In view of Loots's ongoing conduct, in October 2021, Twitch requested that the JAMS tribunal issue an amended order for default judgment that explicitly included Loots Media GmbH, doing business as New.Loots, and Mr. Fuehnen. Dkt. No. 3-2 ¶ 30; Dkt. No. 26-1 ¶ 14. On

1  February 25, 2022, the tribunal granted that request. The amended arbitration order awarded
2  Twitch the same relief as the prior orders, but the injunction was amended to include "Respondent
3  [i.e., Fishwoodco GmbH doing business as Loots] and its officers, agents, representatives,
4  employees, and successors and assigns, including but not limited to Loots Media GmbH, Fuehnen
5  Holding GmbH, Marc Fuehnen, and the operators of its websites like loots.com and
6  new.loots.com (or any other name or website incorporating Loots or that is confusingly similar to
7  Loots)[.]" Dkt. No. 3-7 at ECF 25-26; *see also* Dkt. No. 3-2 ¶ 31; Dkt. No. 26-1 ¶ 15. Twitch's
8  counsel states that Loots and Mr. Fuehnen were served with the arbitration awards by email to Mr.
9  Fuehnen on March 1, 2022. *See* Dkt. No. 26-1 ¶ 15; *see also* Dkt. No. 16-2.

### B.     The Present Action

On June 2, 2022, Twitch filed the present action, seeking confirmation of the JAMS arbitration awards issued on January 4, 2021, May 7, 2021, and February 25, 2022, as well as entry of judgment. Dkt. No. 1; *see also* Dkt. No. 3-2.

Following Twitch's unsuccessful attempt at service of process through the Hague Convention, on November 15, 2022, the Court granted in part and denied in part Twitch's motion for leave to serve Loots by alternate means. Specifically, the Court granted Twitch leave to serve Loots by email and through social media. *See* Dkt. No. 17. The Court denied without prejudice Twitch's motion for leave to effect service by email on Sebastian Laboga (identified as an attorney and the insolvency administrator overseeing Loots's ongoing insolvency proceedings in Germany). *Id*.

Twitch subsequently filed a certificate of service, stating that on November 17, 2022, it successfully served Loots with its petition to confirm the arbitration awards and related documents, via email to Mr. Fuehnen. *See* Dkt. No. 18. Twitch advised Loots that Loots had 21 days to file a response to Twitch's petition, and that the failure to respond or otherwise appear in the case would result in the entry of default against Loots. *See* Dkt. No. 18-1.

Twitch's counsel avers that on December 8, 2022, they were contacted by counsel for Mr. Fuehnen, who challenged the propriety of Twitch's service of process and requested that Twitch withdraw its petition to confirm the arbitration awards. Dkt. No. 26-1 ¶ 19. Twitch's counsel

states that the correspondence received from Mr. Fuehnen's counsel incorrectly claimed that Mr. Fuehnen never received notice of the JAMS arbitration, even though Mr. Fuehnen initially participated in the JAMS arbitration and communicated with Twitch's counsel regarding those proceedings. *Id*. ¶ 20. While Mr. Fuehnen's counsel stated that Mr. Fuehnen is not an officer of Loots, Twitch's counsel maintains that Mr. Fuehnen continues to hold himself out as Loots's co-founder and CEO on LinkedIn and that Loots's German insolvency proceedings list Mr. Fuehnen as a representative of Loots. *Id*.; *see also* Dkt. No. 31-1 ¶ 2 & Ex. A.

On January 11, 2023, Twitch's counsel responded to Mr. Fuehnen's counsel, advising that service was made pursuant to the Court's November 15, 2022 order permitting alternate service and that Twitch would not withdraw its petition for confirmation of the arbitration awards. Dkt. No. 26-1 ¶ 22. Twitch further noted that it would seek default judgment on its petition, as Loots had not filed a response to the petition by the December 8, 2022 deadline. *Id*.

Twitch's counsel states her understanding that in January 2023, Mr. Fuehnen contacted JAMS and requested modification of the February 25, 2022 award, but was informed by JAMS that JAMS no longer had jurisdiction over the matter and that any issues concerning the arbitration awards should be directed to a court in appropriate confirmation or vacatur proceedings. *Id*. ¶ 23.

In January 2023, Mr. Fuehnen also emailed this Court's staff about the present action, and was told that the Court could not act on email communications, and that any matters requiring the Court's consideration must be filed on the court's docket. *See id*.

On March 16, 2023, the Court received a motion for leave to file a brief in response to Twitch's petition. Dkt. No. 23. As noted above, the motion was filed by counsel for Loots Media GmbH, Fuehnen Holding GmbH, and Mr. Fuehnen, who describe themselves as "amici curiae." *See id*.

On March 24, 2023, Twitch filed the pending motion for default judgment. Dkt. No. 26.[2]

---

[2] Although there is no certificate regarding formal service of the present motion for default judgment, Twitch's counsel states that Twitch would serve copies of the motion on Loots concurrently with the filing vof the motion. *See* Dkt. No. 26-1 ¶ 27. In any event, the record demonstrates that Mr. Fuehnen, as a representative of Loots, has been given ample notice of that motion, including through electronic service via the ECF system on counsel purporting to act on Mr. Fuehnen's behalf. *See* Dkt. No. 26-1 ¶ 22; *see also* electronic service notice for Dkt. No. 26.

7

Twitch seeks an order confirming the January 4, 2021, May 7, 2021, and February 5, 2022 JAMS arbitration awards for $1,488,000 in damages, $75,176.19 in attorneys' fees and costs, and permanent injunctive relief against "Respondent and its officers, agents, representatives, employees, and successors and assigns, including but not limited to Loots Media GmbH, Fuehnen Holding GmbH, Marc Fuehnen, and the operators of its websites like loots.com and new.loots.com (or any other name or website incorporating Loots or that is confusingly similar to Loots)[.]" *See* Dkt. No. 26-2.  In its underlying petition, Twitch also requests an order granting Twitch post-award/prejudgment interest, as well as post-judgment interest.  *See* Dkt. No. 3-2 at ECF 20-21.

## II.     LEGAL STANDARD

Default may be entered against a party who fails to plead or otherwise defend an action. Fed. R. Civ. P. 55(a).  After entry of default, a court may, in its discretion, enter default judgment. Fed. R. Civ. P. 55(b)(2);[3] *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  In deciding whether to enter default judgment, a court may consider the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  In considering these factors, all factual allegations in the plaintiff's complaint are taken as true, except those relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).  The court may hold a hearing to conduct an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter.  Fed. R. Civ. P. 55(b)(2).

---

[3] A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared." Fed. R. Civ. P. 55(b)(2).  There are no such issues presented here.  Nor are any military service issues implicated. *See* Dkt. No. 26-1 ¶ 25.

8

## III. DISCUSSION

### A. Motion for Leave to File Amicus Brief

As noted above, Loots Media GmbH, Fuehnen Holding GmbH, and Mr. Fuehnen (collectively, "Loots Movants") seek leave to file a brief as "amici curiae" in opposition to Twitch's petition to confirm the subject JAMS arbitration awards. Dkt. No. 23. Twitch objects to that request as inappropriate and untimely. Dkt. No. 27.

Courts have broad discretion to permit the filing of amicus briefs. *Stanley v. Ayers*, No. 07-cv-04727-EMC, 2021 WL 121191, at *2 (N.D. Cal. Jan. 13, 2021). "However, '[a]n amicus curiae is not a party to litigation.'" *Id*. (quoting *Miller-Wohl Co., Inc. v. Comm'r of Labor & Indus., State of Montana*, 694 F.2d 203, 204 (9th Cir. 1982)). "Instead, the 'classic role' of amicus curiae is 'assisting in a case of general public interest, supplementing the efforts of counsel, and drawing the court's attention to law that escaped consideration.'" *Id*. (quoting *Miller-Wohl Co., Inc.*, 694 F.2d at 204). "An amicus curiae is merely a 'friend of the court,' not a party to the action, and to that end, an amicus may not assume the functions of a party, nor may it initiate, create, extend, or enlarge the issues." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig*., Case No. M 02-01486-PJH, 2007 WL 2022026, at *1 (N.D. Cal. July 9, 2007). While there is no rule that amici must be completely disinterested in the litigation, partisanship generally "'is not proper in a trial court." *Feld Entm't, Inc. v. Arena Group 2000, LP*, No. 06cv1077 J (WMc), 2006 WL 8455518, at *2 (S.D. Cal. June 2, 2006). *Cf. Funbus Sys., Inc. v. Cal. Public Utilities Comm'n*, 801 F.2d 1120, 1125 (9th Cir. 1986) (finding appellate amici briefing proper where amici "d[id] not present highly partisan . . . account[s] of the facts, or indeed, *any* account of the facts[.]").

Here, the Loots Movants' proposed brief exceeds the traditional, limited role of an amicus curiae. They essentially seek vacatur of the subject JAMS arbitration awards, in the guise of an amicus brief, based on a highly partisan recitation of facts, arguing that they should not be bound by those awards that directly affect their interests. Accordingly, this Court finds that the Loots Movants' proposed amicus brief is inappropriate and recommends that the motion for leave to file that brief be denied.

9

**B.     Jurisdiction**

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

### 1.     Subject Matter Jurisdiction

The Court agrees that Twitch has established the citizenship and amount-in-controversy requirements for diversity jurisdiction under 28 U.S.C. § 1332.

This Court also finds that there is jurisdiction under the New York Convention ("Convention"). *See* 9 U.S.C. § 202. As discussed below, the present matter concerns an arbitral award falling under the Convention. Twitch asserts that the subject final arbitration awards arise under the Convention because the present action is not entirely between U.S. citizens, and the awards are based on Twitch's TOS and other policies, "which are contracts governing Twitch services[.]" Dkt. No. 3-2 ¶ 3; *see also id*. at ECF 16-17. "An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States." 9 U.S.C. § 203. "The district courts of the United States (including the courts enumerated in section 460 of title 28) shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy." *Id*.

### 2.     Personal Jurisdiction

While it appears to be an open question whether personal jurisdiction may be based solely on an agreement to arbitrate disputes in a forum, *see Fireman's Fund Ins. Co. v. Nat'l Bank of Cooperatives*, 103 F.3d 888, 893-894 (9th Cir.1996); *Foster v. Device Partners Int'l LLC*, No. C 12-02779 (DMR), 2012 WL 6115618, at *4 (N.D. Cal. Nov. 21, 2012), the record presented demonstrates that personal jurisdiction over Loots is based on more than Loots's agreement to arbitrate in California. As noted above, Loots participated in the underlying arbitration proceedings before defaulting. Dkt. No. 3-2 ¶¶ 18, 19, 21-22; Dkt. No. 3-7 at ECF 3-4, 18-19; Dkt. No. 26-1 ¶¶ 8, 9. As confirmed by Twitch at oral argument, there is no indication that Loots challenged personal jurisdiction or that it had any intent to do so, when Loots appeared and participated in the arbitration proceedings. *See* Dkt. No. 3-7. This Court finds that it has personal

10

jurisdiction over Loots.

### C. Service of Process

As discussed above, the record indicates that Loots was served via email to Mr. Fuehnen, pursuant to the Court's November 15, 2022 order permitting service by alternate means. *See* Dkt. Nos. 17, 18.

The Court requested supplemental briefing regarding whether service on Mr. Laboga is necessary to satisfy service of process requirements for the purposes of default judgment. Dkt. No. 30. In response, Twitch submitted a declaration from its German counsel, Dr. Jens Hackl, who avers that under German law, "a debtor such as Loots still has the capacity to be a party to and participate in legal proceedings against it, as well as the capacity to be sued, even after insolvency proceedings have been initiated relating to the debtor." Dkt. No. 31-1 ¶ 2. Additionally, Dr. Hackl states that publicly available records in Loots's German insolvency proceedings show that Mr. Fuehnen "is currently listed as one of Loots' 'managing directors.'" *Id*. ¶ 3 & Ex. A. In any event, Twitch states that in May 2022, it filed monetary claims with Mr. Laboga in the German insolvency proceedings for $1,488,000 and $75,176.19 for the monetary damages and attorneys' fees and costs, respectively, awarded in the JAMS arbitration. *Id*. ¶ 5. Counsel attests that while Mr. Laboga requested a monetary conversion to Euros and other documentation, thus far, he has not objected to Twitch's monetary claims. *Id*.

Based on the foregoing, this Court finds that service properly has been effected on Loots.

### D. *Eitel* Factors

While the federal policy favoring resolution of matters on the merits (seventh factor) always weighs against default judgment, this Court finds that most of the *Eitel* factors weigh in favor of default judgment or are neutral. With respect to the first factor, Twitch would be prejudiced if the motion for default judgment were denied. Twitch would likely be left without a remedy, in view of Loots's failure to appear or otherwise defend this action. *See Wong To Yick Wood Lock Ointment Ltd. v. Madison One Acme Inc*., No. CV 14-07645 SJO (FFMx), 2015 WL 13919415, at *4 (C.D. Cal. Apr. 21, 2015) (finding that petitioner would likely suffer prejudice where respondent failed to appear). Additionally, the amount of money at stake (fourth factor) is

the amount awarded by the JAMS arbitration tribunal.[4] There is nothing to suggest that Loots has ever taken the position that the tribunal's decision and award was not consistent with the arbitration agreement between Twitch and Loots. Nor is there any indication that Loots objected to the arbitration proceedings or the arbitrator's authority to adjudicate the issues presented. *See id*. at *5 ("The amount of money at stake here is the amount awarded in the Arbitral Awards. . . . Because the damages sought arise directly from an arbitration award, where Respondent's conduct has been considered, this factor favors entry of default judgment against Respondent So's."). While Mr. Fuehnen has sought to oppose Twitch's petition to confirm the arbitration awards, he has attempted to do so only through an inappropriate proposed amicus brief; and, as noted above, no one has appeared on behalf of Loots in the present action. The possibility of a dispute concerning material facts (fifth factor) therefore is neutral. Nor does it appear that Loots's default was due to excusable neglect (sixth factor), as Loots was served with process through notice to Mr. Fuehnen (Dkt. No. 18) and has had ample opportunity to properly defend against Twitch's petition, but has not done so.

Considering the merits of Twitch's claims and the sufficiency of its petition together (factors two and three), Twitch has demonstrated that there was an agreement to arbitrate pursuant to Twitch's TOS. *See* Dkt. No. 1-2 ¶ 4, Ex. A at ECF 11; *see also* Dkt. No. 3-2 ¶¶ 13, 17. Both the United States and Germany are signatories to the New York Convention. *See* Convention done at New York June 10, 1958, 21 U.S.T. 2517, T.I.A.S. No. 6997. Article I of the Convention provides:

> This Convention shall apply to the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought, and arising out of differences between persons, whether physical or legal. It shall also apply to arbitral awards not considered as domestic awards in the State where their recognition and enforcement are sought.

*Id*., Art. I. "Courts have broadly interpreted the phrase 'not considered as domestic' in Article I to include arbitration awards 'involving parties domiciled or having their principal place of business

---

[4] Twitch's request for post-award/prejudgment and post-judgment interest is addressed below.

12

outside the enforcing jurisdiction.'" *Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*, 264 F. Supp. 2d 926, 932 (N.D. Cal. 2003) (quoting *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 19 (2d Cir.1997)). "'[A]ny commercial arbitral agreement, unless it is between two United States citizens, involves property located in the United States, and has no reasonable relationship with one or more foreign states, falls under the Convention.'" *Id*. (quoting *Jain v. de Mere*, 51 F.3d 686, 689 (7th Cir.1995)); *see also Aspic Eng'g & Constr. Co. v. ECC Centcom Constructors, LLC*, 268 F. Supp. 3d 1053, 1057 (N.D. Cal. 2017) ("The New York Convention applies to arbitrations where one of the parties is a U.S. citizen and the other is a citizen of a foreign contracting state."). Here, recognition and enforcement of the JAMS arbitration awards are sought in the United States; Twitch's TOS giving rise to the arbitration awards are commercial in nature; and Loots is said to be a citizen of Germany. Therefore, the New York Convention applies. *See, e.g., Aspic Eng'g & Constr. Co.*, 268 F. Supp. 3d at 1058-59 (concluding that New York Convention applied in proceeding to enforce or vacate award issued in California arbitration arising out of commercial contract between U.S. and Afghan companies); *Certain Underwriters at Lloyd's London*, 264 F. Supp. 2d at 932 (concluding that New York Convention applied in proceeding to disqualify neutral umpire in arbitration arising out of a commercial contract between British and U.S. parties).

Within three years after an award falling under the Convention is made, "any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration." 9 U.S.C. § 207. The scope of the district court's review of an arbitration award under the Convention is "quite circumscribed." *Ministry of Defense of the Islamic Republic of Iran v. Gould, Inc.*, 969 F.2d 764, 770 (9th Cir. 1992). Indeed, the court "shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207; *see Ministry of Defense & Support for the Armed forces of the Islamic Republic of Iran v. Cubic Defense Sys., Inc.*, 665 F.3d 1091, 1103 (9th Cir. 2011) (judicial review of an arbitration award does not involve "review of the merits of the underlying arbitration," but "only whether the party established a defense under the Convention.") (internal quotations and citation omitted). "The

seven grounds for refusing to confirm an award are set out in Article V of the Convention." *Cubic Defense Sys., Inc.*. 665 F.3d at 1096. "These defenses are construed narrowly, and the party opposing recognition or enforcement bears the burden of establishing that a defense applies." *Id*. That burden is "substantial," in view of the "strong policy favoring confirmation" of arbitration awards. *Id*. at 1098.

Article V of the Convention states:

> 1. Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:
>
> (a) The parties to the agreement referred to in article II were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or
>
> (b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or
>
> (c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or
>
> (d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or
>
> (e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.
>
> 2. Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:
>
> (a) The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or
>
> (b) The recognition or enforcement of the award would be contrary to the public policy of that country.

14

Convention done at New York June 10, 1958, 21 U.S.T. 2517, Art. V.

As noted above, in these proceedings no one has made an appearance or responded on behalf of Loots. Accordingly, this Court finds no basis to conclude that any defense under the Convention has been established. Because the arbitration award appears valid, and because the majority of the *Eitel* factors weigh in factor of default judgment, this Court recommends that Twitch's motion for default judgment be granted.

### E.  Requested Relief

This Court now turns to the issue of what relief is proper.

For the reasons discussed above, the Court recommends that the JAMS tribunal's decision and award in the amount of $1,488,000 in monetary damages and $ 75,176.19 in attorneys' fees and costs should be confirmed in their entirety. *See* Dkt. No. 3-7. Additionally, this Court recommends confirmation of the tribunal's February 25, 2022 order for injunctive relief against "Respondent [Fishwoodco GmbH doing business as Loots] and its officers, agents, representatives, employees, and successors and assigns, including but not limited to Loots Media GmbH, Fuehnen Holding GmbH, Marc Fuehnen, and the operators of its websites like loots.com and new.loots.com (or any other name or website incorporating Loots or that is confusingly similar to Loots)[.]" *See id*. at ECF 26-27.

Although its motion papers are ambiguous, at oral argument Twitch confirmed that, as requested in its underlying petition, Twitch also seeks an award of post-award/prejudgment interest from the date of the tribunal's February 25, 2022 award, as well as post-judgment interest from the entry of judgment confirming the arbitration awards. *See* Dkt. No. 3-2 ¶ 39. The decision "whether to award prejudgment interest falls within the district court's discretion." *Cubic Defense*, 665 F.3d at 1103. "The district court's discretion to award prejudgment interest, of course, must be exercised in a manner consistent with the underlying arbitration award." *Id*. "A court may not award pre-judgment interest when the arbitration tribunal has determined that such interest is not available." *Id*. Here, the JAMS tribunal's awards say nothing about the availability of post-award, prejudgment interest. *See id*. (remanding matter to district court for determination whether, under the circumstances of the case, petitioner is entitled to post-award, prejudgment

15

interest, where the underlying arbitration award "was silent" on that issue). This Court finds that an award of such interest payments is appropriate, as it could discourage further gamesmanship and delay by Loots with respect to compliance with the arbitration awards. Such interest should be calculated using "'the interest rate prescribed for post-judgment interest under 28 U.S.C. § 1961 . . . for fixing the rate of pre-judgment interest.'" *Purus Plastics GmbH v. Eco-Terr Distributing, Inc.*, No. C18-0277JLR, 2018 WL 3064817, at *10 (W.D. Wash. June 21, 2018) (quoting *Asdale v. Int'l Game Tech.*, 763 F.3d 1089, 1093 (9th Cir. 2014)).

As for post-judgment interest, Twitch has cited authority indicating that such interest is also appropriate. *See* 28 U.S.C. § 1961 ("Interest shall be allowed on any money judgment in a civil case recovered in a district court."); *Lagstein v. Certain Underwriters at Lloyd's of London*, 725 F.3d 1050, 1056 (9th Cir. 2013) ("Postjudgment interest on a district court judgment is mandatory per 28 U.S.C. § 1961."); *see also Wong To Yick Wood Lock Ointment Ltd.*, 2015 WL 13919415 at *6 (same).]

## IV. CONCLUSION

Because not all parties have consented to the this Court's jurisdiction, it is ordered that this case be reassigned to a district judge. For the reasons discussed above, it is recommended that the newly assigned district judge:

1. Deny the Loots Movants' motion for leave to file an amicus brief.

2. Grant Twitch's motion for default judgment and confirm the January 4, 2021, May 7, 2021, and February 25, 2022 arbitration awards for $1,488,000 in monetary damages, $75,176.19 in attorneys' fees and costs, and permanent injunctive relief prohibiting Fishwoodco GmbH, doing business as Loots, and its officers, agents, representatives, employees, and successors and assigns, including but not limited to Loots Media GmbH, Fuehnen Holding GmbH, Marc Fuehnen, and the operators of its websites like loots.com and new.loots.com (or any other name or website incorporating Loots or that is confusingly similar to Loots), from:

    a. Using the TWITCH Marks or any confusingly similar derivation thereof;

    b. Using or accessing Twitch Services, including through the knowing use of intermediaries; and

   c. Displaying, or causing others to display, advertisements via the Twitch Services in violation of applicable legal terms.

3. Grant Twitch's request for post-award, prejudgment interest at the statutory rate pursuant to 28 U.S.C. § 1961(a) from the date of the February 25, 2022 award.

4. Grant Twitch's request for post-judgment interest at the statutory rate pursuant to 28 U.S.C. § 1961 from the date of entry of judgment confirming the arbitration awards.

Twitch shall promptly serve Loots with this report and recommendation and file a certificate of service with the Court. Any party may serve and file objections to this report and recommendation within 14 days after being served. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Civ. L.R. 72-3.

**IT IS SO ORDERED.**

Dated: May 31, 2023

*[signature]*
VIRGINIA K. DEMARCHI
United States Magistrate Judge